**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Zander Schlacter; *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:25-cv-1344 |
| U.S. Department of State; *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OF LAW AND AUTHORITY IN SUPPORT OF PLAINTIFFS'
MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM, TO WAIVE
REQUIREMENT UNDER LOCAL RULE 102.2(a) TO PROVIDE ADDRESSES IN
COMPLAINT CAPTION, AND FOR A PROTECTIVE ORDER**

Plaintiffs submit this memorandum of law in support of their motion for leave to proceed under pseudonym, to waive requirement under Local Rule 102.2(a) to provide addresses in complaint caption, and for a protective order. The request for leave to proceed under pseudonyms and for protective order applies to Plaintiffs David Doe, Robert Roe, Peter Poe, and Kris Koe (together, "Pseudonymous Plaintiffs").[1] The request to waive requirement under Local Rule 102.2(a) to provide addresses in complaint caption applies to all Plaintiffs.

**INTRODUCTION**

Plaintiffs are individuals who are unable to obtain a passport with the sex marker that reflects the sex they live as and express. On January 20, 2025, President Trump issued Executive Order 14168 (hereafter the "Gender Order"),[2] which sets a government-wide policy denying the

---

[1] To protect their privacy pending consideration of this motion, in their Complaint and this motion, Plaintiffs have used the pseudonyms for which they seek leave to use in this action.

[2] Exec. Order 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed. Reg. 8615 (Jan. 20, 2025).

very existence of transgender people, including nonbinary people, by proclaiming that possessing a gender identity that is incongruent with a person's assigned sex at birth is a "false claim." § 2(f). To advance the aims of the Gender Order, the State Department reversed longstanding United States passport policy, instead, declaring that it "will only issue passports with an M or F sex marker that match the customer's biological sex at birth" (the "Passport Policy").[3] Subsequently, Plaintiffs Zander Schlacter, Jill Tran, Lia Hepler-Mackey, David Doe, and Kris Koe received passports with incorrect sex markers, inconsistent with their gender identities. The Passport Policy also bars Plaintiffs Robert Roe and Peter Poe from receiving passports with correct sex markers, consistent with their gender identities.

Proceeding under pseudonym is necessary to protect Pseudonymous Plaintiffs from undue harassment, discrimination, and violence because of their transgender status, as well as to prevent unnecessary and harmful disclosure of intimate and private information. To avoid risks of serious mental, emotional, and physical harm, as well as undue invasions of their privacy, these Pseudonymous Plaintiffs respectfully request permission to litigate under pseudonyms for the duration of this case and for a protective order barring disclosure of their real names and other identifiers. Similarly, to protect their privacy and safety and to avoid exposure to discrimination and harassment, all Plaintiffs, including Plaintiffs Zander Schlacter, Jill Tran, and Lia Hepler-Mackey, also request waiver of the requirement under Local Rule 102.2(a) that they provide their addresses in the caption of the Complaint.

Pseudonymous Plaintiffs have no objection to providing their legal names to counsel for Defendants and the Court. They also do not intend to prevent the public from having access to the

---

[3] *Sex Marker in Passports* (last updated Feb. 11, 2025), available at https://perma.cc/TG9V-ZKTR (last accessed April 25, 2025).

Court's rulings or observing the proceedings of this Court under adequate protection. Plaintiffs want only to prevent public disclosure of their identities.

Because this request is vital for protecting Plaintiffs from harm and because it will not impede the public's understanding of the case or burden Defendants in any way, Plaintiffs' request easily satisfies the Fourth Circuit's multi-factor balancing test announced in *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993), and should be granted.

## STATEMENT OF FACTS

### A.    The Gender Order and Passport Policy

The Gender Order issued by President Trump on January 20, 2025 attempts to impose a government-wide policy denying the existence of transgender people by declaring that it is the policy of the federal government that there are only two sexes and that, for all federal legal purposes, sex is unalterably fixed at conception. As decreed by the Gender Order, each person's sex is determined by a newly concocted and scientifically inaccurate definition that turns on whether a person "belong[ed], at conception" or at birth "to the sex that produces" either "the large" or "the small reproductive cell." Compl. ¶¶ 1-2.

The United States previously issued passports to transgender people that were consistent with their gender identity and reflected the sex they live as and express, rather than the sex they were assigned at birth. *Id.* ¶ 4. In furtherance of the unlawful aims of the Gender Order, the State Department has recently reversed settled United States passport policy. *Id.* ¶ 5. Secretary Rubio ordered the State Department to integrate the Gender Order's inaccurate and exclusionary definitions of sex and related terms into the issuance and renewal of passports. *Id.* The State Department subsequently issued a directive ordering all passport issuances and renewals to comply with the Gender Order. *Id.* The State Department then updated its website to state that, pursuant to the Gender Order, it "will only issue passports with an M or F sex marker that match the customer's

biological sex at birth as defined in the executive order" and "will no longer issue U.S. passports . . . with an X marker." *Id.* Now, rather than issuing passports that accurately reflect the passport holder's sex, consistent with their gender identity, the State Department is issuing passports with arbitrarily assigned sex markers of its choosing. *Id.*

Certain Plaintiffs are among those people that have been denied a correct sex marker—either F, M, or X—in their passports as a result of the Gender Order and thus have been injured as a direct result of the Passport Policy. The remaining Plaintiffs are unable to obtain a passport with a sex marker that accurately reflect their sex, consistent with their gender identity. All Plaintiffs are suffering grave, immediate harm, in violation of their constitutional rights to equal protection, travel, privacy, and speech, and in violation of the Administrative Procedure Act (the "APA"), because of the Passport Policy.

## B.    The Plaintiffs

Plaintiff David Doe is a 55-year-old transgender man who lives in Pennsylvania with his wife and children. Compl. ¶¶ 126-27. He has lived and been known only as male for nearly two decades. *Id.* ¶ 129. Mr. Doe relies on accurate identity documents for his privacy and safety, particularly when traveling. *Id.* ¶¶ 134-36. On February 13, 2025, the State Department issued Mr. Doe a passport incorrectly listing his sex as female, despite decades-old legal documentation, including his U.S. passport, correctly identifying him as male. *Id.* ¶ 133. This error means Mr. Doe cannot travel internationally with his family over the summer break. *Id.* ¶¶ 131, 138. The incorrect sex marker exposes him to harassment, discrimination, and serious risks at borders and in foreign countries. *Id.* ¶ 135. Mr. Doe seeks to proceed under a pseudonym and requests the court waive the requirement under Local Rule 102.2(a) to provide his address to protect his privacy and safety.

Plaintiff Robert Roe is a 42-year-old transgender man and career Foreign Service Officer with the U.S. Department of State. *Id.* ¶¶ 139-40. He has lived as male in all aspects of his life

4

since 2022 and updated his legal documents, including his birth certificate and personal use U.S. passport, to reflect his male identity. *Id.* ¶¶ 141-42. Mr. Roe is scheduled for a new overseas post beginning in 2026 and must renew his diplomatic passport to report to his new assignment. *Id.* ¶ 143. Due to the Passport Policy, he cannot obtain a diplomatic passport with the correct sex marker. *Id.* ¶ 144. An inaccurate "F" marker would out him as transgender, potentially preventing him from securing a visa or diplomatic ID, and expose him to harassment, discrimination, or denial of services abroad. *Id.* ¶¶ 145-47. Mr. Roe seeks to proceed under a pseudonym and requests the court waive the requirement under Local Rule 102.2(a) to provide his address to protect his privacy and safety.

Plaintiff Peter Poe is a 22-year-old transgender man and lifelong Maryland resident currently attending college. *Id.* ¶¶ 148-49. He legally updated his name and sex marker on his Maryland driver's license and birth certificate as well as his Social Security record. *Id.* ¶ 150. Mr. Poe plans to travel with his family in the summer of 2025 to his father's birthplace in Europe—a trip made possible by an inheritance and likely his grandmother's final chance to visit her homeland. *Id.* ¶ 152. Due to the Passport Policy, Mr. Poe cannot obtain a passport that accurately reflects his male identity, which puts him at risk of harassment and discrimination during international travel. *Id.* ¶¶ 153-55. His past experiences with a mismatched ID—including being questioned at the polls—have made him deeply fearful of the consequences of traveling with incorrect documentation. *Id.* ¶ 156. Mr. Poe seeks to proceed under a pseudonym and requests the court waive the requirement under Local Rule 102.2(a) to provide his address to safeguard his privacy and well-being.

Plaintiff Kris Koe is a 23-year-old nonbinary person living in Connecticut. *Id.* ¶¶ 158-59. They are a full-time university student and babysitter to their niece, working part-time as a tutor

and grocery store employee. *Id.* ¶ 158. Mx. Koe legally updated their driver's license and birth certificate to reflect an "X" sex marker, aligning with their nonbinary identity. *Id.* ¶ 161. In February 2025, they received a U.S. passport with an incorrect "F" marker, despite having submitted a request for an "X" marker. *Id.* ¶¶ 163-64. This mismatch puts Mx. Koe at risk of discrimination and privacy violations while traveling abroad to pursue graduate study in Germany. *Id.* ¶¶ 162, 165-66. They have already experienced heightened scrutiny at the border due to their appearance and identity. *Id.* ¶ 167. Mx. Koe seeks to proceed under a pseudonym and requests the court waive the requirement under Local Rule 102.2(a) to provide their address to avoid further harm.

Plaintiff Zander Schlacter is a 29-year-old transgender man living in New York. *Id.* ¶¶ 96-97. He often travels internationally for both work and leisure and relies on a valid and accurate passport to do so. *Id.* ¶¶ 99-100. In February 2025, Mr. Schlacter received a passport, which expires in 2035, with his legal name corrected but with an incorrect "F" sex marker, despite having submitted a request for a "M" marker. *Id.* ¶¶ 102-03. This incorrect marker means Mr. Schlacter cannot travel given the risk of harassment, discrimination, and privacy invasions resulting from his incorrect passport. *Id.* ¶¶ 104-06. Mr. Schlacter requests the court waive the requirement under Local Rule 102.2(a) to provide his address to safeguard his privacy and well-being.

Plaintiff Jill Tran is a 27-year-old transgender woman living in Maryland. *Id.* ¶¶ 107-08. In February 2025, Ms. Tran received a passport, which expires in 2035, with an incorrect "M" sex marker despite having submitted her legal name and gender change order to the State Department. *Id.* ¶¶ 111-12. The incorrect marker means Ms. Tran cannot travel without facing harassment, discrimination, and privacy invasions, including the risk of increased screening from TSA and

other border officials. *Id.* ¶¶ 114-16. Ms. Tran requests the court waive the requirement under Local Rule 102.2(a) to provide her address to safeguard her privacy and well-being.

Plaintiff Lia Hepler-Mackey is a 24-year-old transgender woman living in California. *Id.* ¶¶ 117-18. Ms. Hepler-Mackey wishes to travel internationally and applied for a passport in early 2025. *Id.* ¶ 121. In February 2025, Ms. Hepler-Mackey received a passport, which expires in 2035, with an incorrect "M" sex marker. *Id.* ¶ 122. The incorrect marker means Ms. Hepler-Mackey cannot travel without facing harassment, discrimination, and privacy invasions, including the risk of increased screening from TSA and other border officials. *Id.* ¶¶ 123-24. Ms. Hepler-Mackey requests the court waive the requirement under Local Rule 102.2(a) to provide her address to safeguard her privacy and well-being.

## ARGUMENT

There is a "long tradition in both federal and state courts of permitting parties to proceed anonymously when they have a strong privacy interest in doing so." *Anonymous v. Legal Servs. Corp. of P.R.*, 932 F. Supp. 49, 50 (D.P.R. 1996). Courts in the Fourth Circuit permit a plaintiff to proceed anonymously where, as here, the plaintiffs' privacy interests outweigh the benefit of keeping the proceeding open and the defendant will not be prejudiced. *James*, 6 F.3d at 238.

Many courts have held that "an individual's transgender identity can carry enough of a social stigma to overcome the presumption in favor of disclosure." *Doe v. City of Detroit*, No. 18-cv-11295, 2018 WL 3434345, at *2 (E.D. Mich. July 17, 2018) (collecting cases); *see also Foster v. Andersen*, No. 18-2552-DDC-KGG, 2019 WL 329548, at *2 (D. Kan. Jan. 25, 2019) ("[C]ourts have recognized the highly personal and sensitive nature of a person's transgender status and thus have permitted transgender litigants to proceed under pseudonym."). For that reason, courts in this Circuit have allowed transgender plaintiffs to proceed under pseudonym, especially where, as here, they are seeking prospective relief against government defendants. *See, e.g., PFLAG, Inc. v.*

*Donald J. Trump*, 8:25-cv-00337-BAH, Dkt. No. 117 (March 4, 2025) (paperless order granting motion to file under pseudonyms and waive requirement to provide addresses under Local Rule 102.2(a) in case involving transgender plaintiffs); *Hersom v. Crouch*, No. 2:21-cv-00450, 2022 WL 908503, at *2 (S.D. W.Va. Mar. 28, 2022). Indeed, another court recently held that transgender and nonbinary plaintiffs filing suit over the Passport Policy at issue here were entitled to proceed under pseudonym. Mem. & Order on Pls' Mot. to Proceed Under Pseudonym, *Orr v. Trump*, No. 1:25-cv-10313-JEK, ECF No. 60 (D. Mass. Mar. 18, 2025). The multi-factor balancing test set forth in *James* strongly supports allowing Pseudonymous Plaintiffs to proceed under pseudonyms in this litigation.

## I.     THE *JAMES* FACTORS WEIGH STRONGLY IN FAVOR OF PSEUDONYMITY

The Fourth Circuit has directed trial courts in this district to balance several factors in assessing a party's request to proceed under a pseudonym. Those factors include:

> [1] Whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent nonparties; [3] the ages of the person whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James*, 6 F.3d at 238 (numerals added).

Not all the *James* factors may be relevant to a given case, and there may be other factors that are relevant. *Doe v. Alger*, 317 F.R.D. 37, 39 (W.D. Va. Mar. 31, 2016). "At bottom . . . the trial court must 'carefully review *all* the circumstances of the case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'" *Id*. at 39-40 (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (per curiam)) (emphasis in original).

A.    **Disclosure of Plaintiffs' Identifying Information Would Reveal Matters of Sensitive and Highly Personal Nature.**

Courts routinely recognize that "a person's transgender status is a highly sensitive and private matter." *Hersom*, 2022 WL 908503, at *2 (applying *James*); *see also Kadel v. Folwell*, 620 F. Supp. 3d 339, 391 (M.D.N.C. 2022) (finding "Plaintiffs' privacy interest outweighs the public's limited interest in learning the private medical details of Plaintiffs' experiences with gender dysphoria"); *Doe v. Genesis HealthCare*, 535 F. Supp. 3d 335, 339 (E.D. Pa. 2021) (courts "have allowed anonymity due to the private and intimate nature of being transgender as well as the widespread discrimination, harassment, and violence faced by these individuals"); *Foster*, 2019 WL 329548, at *2 ("[T]he disclosure of [plaintiff]'s identity would reveal matters of a highly sensitive and personal nature, specifically [plaintiff]'s transgender status and his diagnosed medical condition—gender dysphoria."); *Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 333 (D.P.R. 2018) ("Disclosing that one is transgender involves a deep personal choice which the government cannot compel, unless disclosure furthers a valid public interest.").

This case concerns not only Plaintiffs' transgender status, which "is natural" and not a "psychiatric condition," *Kadel v. N. Carolina State Health Care Plan for Tchrs. & State Emps.*, 12 F.4th 422, 427 (4th Cir. 2021), but also their personal and private life circumstances underlying the need for effective personal identification documents. The disclosure of sensitive information heightens the need for pseudonymity. *See, e.g.*, *Doe v. Chesapeake Med. Sols., LLC*, SAG-19-2670, 2020 WL 13612472, at *1 (D. Md. Feb. 26, 2020) (finding the first factor weighed in favor of allowing the use of a pseudonym where the plaintiff's claims involved "information about the plaintiff's medical conditions"); *see also Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) (transgender people "are among those who possess a constitutional right to maintain medical confidentiality.").

The Complaint contains highly personal details, including the Plaintiffs' medical diagnoses, histories of gender-affirming treatment, emotional distress, and experiences of discrimination—information that is not typically required to be disclosed in public forums. Forcing disclosure of their identities would not only violate their privacy, but also risk subjecting them to further stigma, harassment, and potential violence. The intensely personal nature of this information, and the real-world consequences of its disclosure, weigh heavily in favor of allowing Plaintiffs to proceed pseudonymously. Several Plaintiffs are not publicly "out" as transgender in their daily lives. This includes Mr. David Doe, who is known only as male in all aspects of his professional and personal life, and who has lived privately and discreetly for nearly two decades. Compl. ¶ 129. Similarly, Mr. Robert Roe and Mr. Peter Poe live private lives where their transgender status is not known beyond their immediate circles. *Id.* ¶¶ 142, 151. For Mx. Kris Koe, the incongruence between their outward gender expression and the sex marker on official documents has already led to moments of intense scrutiny and fear for their personal safety. *Id.* ¶¶ 167-68. The first *James* factor strongly supports pseudonymity.

**B.     Disclosure of Plaintiffs' Identifying Information Would Expose Them to Physical or Mental Harm.**

Courts regularly find that anonymity is appropriate when plaintiffs are at risk of retaliation causing physical or mental harm by bringing the suit if their identities become public. *See, e.g.*, Mem. Op. & Order, *Doe v. McHenry III*, No. 1:25-cv-00286-RCL, ECF No. 7 at 7 (D.D.C. Jan. 31, 2025) (permitting pseudonyms in part because plaintiffs' transgender status was a risk factor for retaliatory violence and assault); *Int'l Refugee Assistance Project v. Trump*, No. TDC-17-0361, 2017 WL 818255, at *2 (D. Md. Mar. 1, 2017) (permitting pseudonyms where plaintiffs, foreign national visa applicants, were at risk of retaliatory harm due to their connection to the United States); *E.E.O.C. v. Spoa, LLC*, No. CCB-13-1615, 2013 WL 5634337 at *2-4 (D. Md. Oct. 15,

2013) (permitting plaintiff to use a pseudonym where she risked retaliation from her employer by bringing a workplace sexual assault claim). Ample evidence exists that "transgender individuals often face verbal and physical harassment when forced to reveal their transgender status." *Hersom*, 2022 WL 908503, at *2; *see also Arroyo González*, 305 F. Supp. 3d at 333 (concluding that forced disclosure of a transgender person's status "exposes transgender individuals to a substantial risk of stigma, discrimination, intimidation, violence, and danger"). As the Fourth Circuit recently recognized, "transgender people have historically been subjected to discrimination." *Folwell*, 100 F.4th at 143.

Anti-transgender attitudes show no signs of abating, and the risk of retaliation against Plaintiffs is very real. If anything, animosity towards transgender people is escalating as politicians intentionally inflame prejudices, as evidenced by the recent Gender Order and Passport Policy.

It is well-documented that over the last few years, "there has been an escalation of organized, political hostility toward the transgender community from people with agendas to restrict access to gender-affirming care for everyone . . . ."[4] Indeed, in 2022 alone, 70% of gender-affirming care providers or their institutions received threats specific to delivering gender-affirming care, including death threats.[5] And a study by the Williams Institute analyzing data from the National Crime Victimization Surveys from 2022 and 2023 found that transgender people experienced violent victimization at a rate of 93.7 per 1,000, compared with 21.1 per 1,000 among non-LGBT persons.[6]

---

[4] Katie O'Connor, Gender-Affirming Clinics Subject to Onslaught of Threats, Harassment, Psychiatry Online (Jan.27, 2023), https://archive.ph/eQMwM (last accessed April 25, 2025).

[5] Hughes, L. D., Gamarel, K. E., Restar, A. J., Sequeira, G. M., Dowshen, N., Regan, K., & Kidd, K. M. (2023). Adolescent Providers' Experiences of Harassment Related to Delivering Gender-Affirming Care. The Journal of Adolescent Health, 73(4), 672–678, https://archive.ph/aHTW6 (last accessed April 25, 2025).

[6] Meyer, Ilan H., Flores, Andrew J. *Anti-LGBT Victimization in the United States*, Williams Institute, UCLA School of Law (February 2025), available at https://perma.cc/PF5X-NCT7 (last accessed April 25, 2025).

The Plaintiffs seek correct sex markers on their passports to both relieve their gender dysphoria and to live and be recognized in accordance with their gender identity, not their sex assigned at birth. Disclosing their identities and thus their transgender status in this litigation interferes with those goals. As other courts have held, pseudonymity is particularly appropriate where—as here—identification would cause the very injury from which the plaintiff seeks relief. *See, e.g., Alger,* 317 F.R.D. at 42 ("If he were not allowed to proceed anonymously, part of the relief he seeks—expungement of his student record—would fall short of making him whole: the cat would have already been let out of the bag."); *see also Doe v. Alaska,* 122 F.3d 1070, 1070 (9th Cir. 1997) ("disclosure [of Plaintiffs' names] will deny them the very relief they seek"); *Foster*, 2019 WL 329548, at *2 ("[T]his suit seeks to vindicate [the plaintiff]'s right to privacy. Requiring [the plaintiff] to reveal his identity would cause him to sustain the very same injury— i.e., a violation of his privacy."); *Roe v. Ingraham,* 364 F. Supp. 536, 541 n.7 (S.D.N.Y. 1973) ("[I]f plaintiffs are required to reveal their identity prior to the adjudication on the merits of their privacy claim, they will already have sustained the injury which by this litigation they seek to avoid."). The Plaintiffs face credible risks of discrimination, harassment, and violence because of their transgender status. For Pseudonymous Plaintiffs, the ability to maintain the privacy of their transgender status is critical to their physical and mental health, now and in the future.

Several Plaintiffs in this case have already experienced serious consequences as a result of being outed or having incongruent identity documents. Mr. Poe was questioned at a polling place because his appearance did not match the sex marker and name on his identification. Compl. ¶ 156. Mx. Koe was subjected to increased scrutiny at the border when returning from Canada. *Id.* ¶ 167. Mr. Doe is unable to travel internationally with his family due to the risk posed by a passport that incorrectly designates him as female. *Id.* ¶ 138. Mr. Roe is now facing professional uncertainty

because his ability to fulfil his diplomatic duties abroad depends on having a diplomatic passport that does not out him to foreign governments. *Id.* ¶ 145. These examples underscore the real-world harms that accompany forced disclosure.

In this climate, requiring Plaintiffs to publicly identify themselves poses not only an invasion of privacy, but a genuine threat to their safety and well-being. For the Plaintiffs, the ability to maintain the privacy of their transgender status is critical to their physical and mental health, now and in the future. The second *James* factor strongly supports pseudonymity.

### C.    Plaintiffs are Challenging Government Activities.

Courts have observed that it is more appropriate to allow plaintiffs to proceed using pseudonyms when they are "challenging the constitutional, statutory or regulatory validity of government activity"—precisely what Plaintiffs challenge here. *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (recognizing that, unlike suits against private entities, suits regarding government action "involve no injury to the Government's 'reputation'"); *Int'l Refugee Assistance Project*, 2017 WL 818255, at *3 ("Use of pseudonyms is more likely to be appropriate in cases challenging government activity because there is both 'arguably a public interest in a vindication of . . . rights' and a risk of stigmatization of the plaintiff, who often represents a minority interest." (citing *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. Feb. 19, 2003))).

This case concerns Defendants'—government entities—policies, practices, and procedures that result in numerous harms to Plaintiffs, including the risk of harassment, discrimination, and physical violence. The Complaint thus raises constitutional and statutory legal challenges and does not turn on the individual Plaintiffs' identities. The Court therefore should protect Pseudonymous Plaintiffs' identities by allowing them to proceed using pseudonyms.

**D.    Because this Case Raises Uniquely Legal Claims Against State Officials, Pseudonymity Does Not Undermine the Public's Interest in Open Judicial Proceedings.**

Although not explicit in *James*, the Fourth Circuit has subsequently ruled that "the public's interest in open proceedings must inform a district court's pseudonymity calculus." *Doe v. Public Citizen*, 749 F.3d 246, 274 (4th Cir. 2014).

Allowing Plaintiffs to proceed under pseudonyms does not deny the public its right to attend the proceedings or inspect the Court's opinions and orders resolving the underlying constitutional issues. *See Alger*, 317 F.R.D. at 39. The public is still free to examine pleadings, evaluate the behavior of the parties and the judiciary, and follow the resolution of claims presented. Indeed, "the only thing potentially being shielded from the public is plaintiff's name and any court proceedings or opinions that might be necessary to determine standing." *Id*. (quoting *Doe v. Barrow Co.*, 219 F.R.D. 189, 193 (N.D. Ga. 2003)).

The public interest in Plaintiffs' identities is further diminished here because of the uniquely legal nature of Plaintiffs' claims. Plaintiffs maintain that the Gender Order and Passport Policy violate the Administrative Procedure Act and their constitutional rights. They do not seek damages. They seek a court order declaring the Gender Order and Passport Policy unconstitutional and unlawful and enjoining enforcement of these discriminatory directives. In such a case, "knowing the Plaintiffs' identities lends little to the public's ability to follow the proceedings or understand the disposition of the case." *Doe v. City of Apple Valley*, No. 20-cv-499 (PJS/DTS), 2020 WL 1061442, at *2 (D. Minn. Mar. 5, 2020); *see also Doe v. El Paso*, No. EP–13–CV– 00406–DCG, 2015 WL 1507840, at *4 (W.D. Tex. April 1, 2015) (distinguishing between legal challenges and individual damages actions where parties' identity might assist discovery). As many courts have held, the public interest pertains to the outcome of the litigation, not the individual participants. *See, e.g., Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011) (favoring

anonymity where, "because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities"); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) (same); *Doe v. Harris*, No. 14–0802, 2014 WL 4207599, at *2 (W.D. La. Aug. 25, 2014) ("[M]any of the cases allowing plaintiffs to proceed anonymously involve challenges to the constitutional, statutory, or regulatory validity of governmental activity.").

In sum, Plaintiffs' claims turn on strictly legal questions of statutory interpretation and constitutional jurisprudence. As a result, Pseudonymous Plaintiffs' request does not impede the public's interest in open judicial proceedings.

### E.   Defendants Would Not Be Prejudiced by the Issuance of a Protective Order or by an Order Granting Pseudonymity.

For two reasons, there is no risk of prejudice or unfairness to Defendants if the Court grants Pseudonymous Plaintiffs' request for a protective order and allows them to proceed under pseudonyms.

*First*, as a federal official sued only in his official capacity, Secretary of State Rubio does not suffer the same reputational harm or other disadvantages that private defendants might face if litigating against an anonymous adversary. As other courts have explained, the "government is not vulnerable to similar reputational harm [as a private party], particularly in a case involving a challenge to the constitutional, statutory, or regulatory validity of government activity." *Doe v. Virginia Polytechnic Inst. & State Univ.*, No. 7:19-cv-00249, 2020 WL 1287960, at *4 (W.D. Va. Mar. 18, 2020) (citing *Int'l Refugee Assistance Project*, 2017 WL 818255, at *3); *see also S. Methodist Univ. Ass'n of Women Law Students*, 599 F.2d at 713 (describing suits challenging the constitutional validity of government activity as involving "no injury to the Government's 'reputation'"). For that reason, "[u]se of pseudonyms is more likely to be appropriate in cases

challenging government activity because there is both 'arguably a public interest in a vindication of . . . rights' and a risk of stigmatization of the plaintiff, who often represents a minority interest." *Int'l Refugee Assistance Project*, 2017 WL 8182555, at \*3 (quoting *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003)). The Pseudonymous Plaintiffs represent precisely the kind of "minority interest" that risks stigmatization should their identities be revealed.

*Second*, Defendants will not suffer any unfairness or prejudice from Pseudonymous Plaintiffs proceeding under pseudonyms because their counsel will be provided with each Plaintiff's identifying information under a protective order. *See, e.g.*, *Doe v. Univ. of Maryland Med. Sys. Corp.*, No. SAG-23-1572, 2023 WL 3949737, at \*3 (D. Md. June 12, 2023) ("[T]here is no risk of prejudice to Defendants by allowing this action to proceed anonymously, given that Defendants are aware of Plaintiff's identity."); *Doe v. Virginia Polytechnic*, 2020 WL 1287960, at \*5 ("[T]here is no risk [of unfairness to defendants] because the defendants are aware of Doe's and Roe's identities."); *Foster*, 2019 WL 329548, at \*2 ("[T]he relief sought by this motion will not prejudice defendants [because plaintiff] recites that he does not seek to withhold his identity from defendants but only wishes to prevent disclosure of his identity in public documents."). Subject to a protective order, Defendants' counsel will be free to investigate and validate facts related to Pseudonymous Plaintiffs. There is no prejudice to Defendants if Pseudonymous Plaintiffs' identities are protected from public dissemination.

## II.    THE COURT SHOULD WAIVE LOCAL RULE 102.2(a)'S REQUIREMENT TO PROVIDE ADDRESSES IN THE COMPLAINT CAPTION.

The same reasons that underly Pseudonymous Plaintiffs' request to proceed under pseudonyms apply to Plaintiffs' request for waiver of the requirement in Local Rule 102.2(a) that they provide their addresses in the caption of the Complaint. In addition, this includes Plaintiffs Zander Schlacter, Jill Tran, and Lia Hepler-Mackey who, similar to Pseudonymous Plaintiffs, may

face discrimination, harassment, threats of or actual violence if their addresses become public. Disclosure of Pseudonymous Plaintiffs' addresses would erase the protection of confidentiality they seek because their identities could readily be determined from their addresses. All Plaintiffs would be exposed to real risks of physical and mental harm that they seek to avoid if their addresses were disclosed. As noted, another court in this District has recently granted this relief in another case brought by transgender plaintiffs and their families. *See PFLAG, Inc. v. Donald J. Trump*, 8:25-cv-00337-BAH, Dkt. No. 117 (March 4, 2025) (paperless order granting motion to file under pseudonyms and waive requirement to provide addresses under Local Rule 102.2(a) in case involving transgender plaintiffs).

## CONCLUSION

The public benefits when constitutional rights and liberties are vindicated. "There can be few matters of greater public interest in this country than protecting the constitutional rights of its citizens." *Shilling v. United States*, No. 25-CV-241-BHS, 2025 WL 926866, at *28 (W.D. Wash. Mar. 27, 2025). Here, the American public benefits from Plaintiffs' willingness to challenge the Gender Order and Passport Policy, which already have caused harm and will continue to cause harm if not enjoined. To require the public dissemination of their identities would inflict gratuitous injury, would undermine the relief they seek, is not in the public interest, and preventing such dissemination would not prejudice Defendants' reputation or their ability to defend against Plaintiffs' legal claims.

For these and the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to proceed under pseudonyms, to waive the requirement to provide their addresses under Local Rule 102.2(a), and for a protective order limiting disclosure of their identities to counsel for Defendants and the Court.

Date: April 25, 2025

Respectfully submitted,

/s/ Jonathan I. Gleklen
Jonathan I. Gleklen,  Bar No. 21350
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC  20001
Tel: 202-942-5454
Fax: 202-942-5999
jonathan.gleklen@arnoldporter.com

Lori Leskin*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: 212-836-8541
Fax: 212-836-8689
lori.leskin@arnoldporter.com

Allissa Pollard*
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Ste. 4000
Houston, TX 77002
Tel.: 713-576-2451
Fax: 713-576-2499
allissa.pollard@arnoldporter.com


OF COUNSEL

Kyle Angelotti
District of Columbia Bar No. 9004804
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC  20001
Tel: 202-942-5431
Fax: 202-942-5999
kyle.angelotti@arnoldporter.com

Carl S. Charles*
LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
1 West Court Square, Suite 105
Decatur, GA 30030
Tel: 404-897-1880
Fax: 855-535-2236
ccharles@lambdalegal.org

Karen L. Loewy*
LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
815 16th Street NW, Suite 4140
Washington, DC 20006
Tel: 202-804-6245
Fax: 855-535-2236
kloewy@lambdalegal.org

Peter Renn*
LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
800 South Figueroa Street, Suite 1260
Los Angeles, CA 90017
Tel: 213-382-7600
Fax: 855-535-2236
prenn@lambdalegal.org

Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Tel: 212-809-8585
Fax: 855-535-2236
ogonzalez-pagan@lambdalegal.org

* Motion for admission *pro hac vice*
forthcoming.

Hannah Sibiski
Texas Bar No. 24041373
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Suite 4000
Houston, TX 77002
Tel: 713-576-2400
Fax: 713-576-2499
hannah.sibiski@arnoldporter.com

*Attorneys for Plaintiffs*