**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ZANDER SCHLACTER; *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:25-CV-01344 |
| U.S. DEPARTMENT OF STATE; *et al.*, | |
| *Defendants*. | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................ 1

I.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CONSTITUTIONAL
CLAIMS. ........................................................................................................... 1

     A.     The Policy Violates Plaintiffs' Right to Equal Protection. ........................ 1

          1.     Binding case law requires subjecting the Policy to heightened
scrutiny. ......................................................................................... 1

          2.     The Policy cannot survive any level of review. .............................. 3

     B.     The Policy Violates Plaintiffs' Right to Travel. ........................................ 6

     C.     The Policy Violates Plaintiffs' Right to Privacy. ...................................... 8

II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR APA CLAIMS. ......... 10

     A.     The Policy Is Agency Action. .................................................................. 10

     B.     The Policy Is Reviewable. ........................................................................ 12

     C.     The Policy is Unlawful and is Arbitrary and Capricious. ......................... 13

III.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM. ................................... 14

IV.     THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR
PLAINTIFFS. .................................................................................................. 14

     CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adarand Constructors, Inc. v. Pena*,
  515 U.S. 200 (1995) ..................................................................................................... 2

*AIDS Vaccine Advoc. Coal. v. Dep't of State*,
  766 F. Supp. 3d 74 (D.D.C. 2025)............................................................................. 11, 14

*Am. Federation of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
  No. CV ELH-25-0596, 2025 WL 1206246 (D. Md. Apr. 17, 2025)..................................... 10

*Ancient Coin Collectors Guild v. U.S. Customs & Border Prot., Dep't of Homeland Sec.*,
  801 F. Supp. 2d 383, *aff'd* 698 F.3d 171(4th Cir. 2012) ......................................... 11, 12, 14

*Anderson v. Blake*,
  469 F.3d 910 (10th Cir. 2006) ......................................................................................... 9

*Annex Books, Inc. v. City of Indianapolis, Ind.*,
  581 F.3d 460 (7th Cir. 2009)........................................................................................... 4

*Arroyo Gonzalez v. Rossello Nevares*,
  305 F. Supp. 3d 327 (D.P.R. 2018) ............................................................................... 8, 9

*Bostic v. Schaefer*,
  760 F.3d 352 (4th Cir. 2014)........................................................................................... 8

*Bostock v. Clayton Cnty.*,
  590 U.S. 644 (2020) ....................................................................................................... 5

*Bowen v. Mich. Acad. of Family Physicians*,
  476 U.S. 667 (1986) ..................................................................................................... 12

*Chamber of Com. v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996)..................................................................................... 11, 14

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) ....................................................................................................... 5

*Condon v. Haley*,
  21 F. Supp. 3d 572 (D.S.C. 2014) ................................................................................... 3

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
  189 F. Supp. 3d 85 (D.D.C. 2016)................................................................................... 11

*Doe v. Trump*,
  275 F. Supp. 3d 167 (D.D.C. 2017)................................................................................. 14

*Elhady v. Kable*,
  993 F.3d 208 (4th Cir. 2021)........................................................................................... 8

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*G.G. v. Gloucester Cnty. Sch. Bd.*,
    822 F.3d 709 (4th Cir. 2016), *vacated on other grounds*, 137 S. Ct. 1239 (2017).............................. 15

*Gore v. Lee*,
    107 F.4th 548 (6th Cir. 2024) ........................................................................................................... 9

*Grimm v. Gloucester Cnty. Sch. Bd.*,
    972 F.3d 586 (4th Cir. 2020) ................................................................................................... 1, 2, 3

*Haig v. Agee*, 453 U.S. 280, 306-07 (1981) ....................................................................................... 7

*Int'l Refugee Assistance Project v. Trump*,
    373 F. Supp. 3d 650 (D. Md. 2019), *rev'd and remanded on other grounds*, 961 F.3d
    635 (4th Cir. 2020) ........................................................................................................................ 12

*J.E.B. v. Alabama ex rel. T.B.*,
    511 U.S. 127 (1994) ........................................................................................................................ 2

*Kadel v. Folwell*,
    100 F.4th 122 (4th Cir. 2024) ................................................................................................. 1, 2, 3, 5

*Karnoski v. Trump*,
    926 F.3d 1180 (9th Cir. 2019) ......................................................................................................... 7

*Kent v. Dulles*,
    357 U.S. 116 (1958) ...................................................................................................................... 12

*Kingdom v. Trump*,
    No. 1:25-cv-00691-RCL, 2025 WL 1568238 (D.D.C. June 3, 2025) ...................................... 10, 11

*Laufer v. Acheson Hotels, LLC*,
    50 F.4th 259 (1st Cir. 2022), *vacated as moot*, 601 U.S. 1 (2023)................................................. 7

*M.A.B. v. Bd. of Educ. of Talbot Cnty.*.
    286 F. Supp. 3d 704 (D. Md. 2018)............................................................................................ 2, 3

*Milligan v. Pompeo*,
    502 F. Supp. 3d 302 (D.D.C. 2020)............................................................................................. 11

*New York v. Trump*,
    133 F.4th 51 (1st Cir. 2025) ............................................................................................................ 8

*Opiotennione v. Bozzuto Mgmt. Co.*,
    130 F.4th 149 (2025) ....................................................................................................................... 7

*Orr v. Trump*,
    No. 1:25-cv-10313-JEK, 2025 WL 1145271 (D. Mass. Apr. 18, 2025) .................................... *passim*

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Patton v. State of North Carolina,*
   381 F.2d 636 (4th Cir. 1967) ........................................................................ 7

*Payne v. Taslimi,*
   998 F.3d 648 (4th Cir. 2021) ........................................................................ 8

*PFLAG, Inc. v. Trump,*
   No. 25-337-BAH, 2025 WL 685124 (D. Md. Mar. 4, 2025) ......................... 3, 5

*Powell v. Schriver,*
   175 F.3d 107 (2d Cir. 1999) ....................................................................... 8, 9

*Powers v. Ohio,*
   499 U.S. 400 (1991) ..................................................................................... 2

*Ray v. McCloud,*
   507 F. Supp. 3d 925 (S.D. Ohio 2020) ....................................................... 14

*Roe v. Dep't of Def.,*
   947 F.3d 207 (4th Cir. 2020), *as amended* (Jan. 14, 2020) ..................... 13

*Roe v. Wade,*
   410 U.S. 113 (1973) ..................................................................................... 9

*Romer v. Evans,*
   517 U.S. 620 (1996) ............................................................................... 3, 5, 6

*Schiff v. U.S. Off. of Pers. Mgmt.,*
   No. 25-10595-LTS, 2025 WL 1481997 (D. Mass. May 23, 2025) ............... 13

*Sessions v. Morales-Santana,*
   582 U.S. 47 (2017) ....................................................................................... 2

*Shachtman v. Dulles,*
   225 F.2d 938 (D.C. Cir. 1955) ................................................................... 12

*State v. Su,*
   121 F.4th 1 (9th Cir. 2024) ........................................................................ 14

*Talbott v. United States,*
   No. 25-cv-00240, 2025 WL 842332 (D.D.C. Mar. 18, 2025) ....................... 6

*Trinity Am. Corp. v. U.S. Envtl. Prot. Agency,*
   150 F.3d 389 (4th Cir.1998) ...................................................................... 13

*Turner v. Safley,*
   482 U.S. 78 (1987) ....................................................................................... 7

## TABLE OF AUTHORITIES (cont.)

Page(s)

*U.S. Dep't of Agric. v. Moreno*,
413 U.S. 528 (1973) ................................................................................................ 5

*United States v. Kravetz*,
706 F.3d 47 (1st Cir. 2013) ..................................................................................... 9

*United States v. Virginia*,
518 U.S. 515 (1996) ................................................................................................ 3

*Walls v. City of Petersburg*,
895 F.2d 188 (4th Cir. 1990) ................................................................................... 9

*Washington v. Glucksberg*,
521 U.S. 702 (1997), Opp. 18 .................................................................................. 8

*Zemel v. Rusk*,
381 U.S. 1 (1965) ................................................................................................ 8, 13

*Zzyym v. Pompeo*,
958 F.3d 1014 (10th Cir. 2020) .............................................................................. 12

### Statutes and U.S. Constitutional Provisions

Passport Act, 22 U.S.C. § 211a .................................................................................... 12

Administrative Procedure Act, 5 U.S.C. § 706 ........................................................... 13

U.S. Const. Amend. V ........................................................................................... *passim*

### Other Authorities

Agreement for the Prosecution and Punishment of the Major War Criminals of the
European Axis art. 8, Aug. 8, 1945, 82 U.N.T.S. 279 ........................................... 14

U.S. State Department 2023 Country Reports on Human Rights Practices (Apr. 22, 2024) ........................ 6

## INTRODUCTION

Defendants' Opposition to Plaintiffs' Request for a Preliminary Injunction urges the Court to ignore its obligation to apply binding Fourth Circuit precedent and to disregard the practical, legal, and constitutional implications of the Passport Policy ("the Policy") challenged by Plaintiffs. In doing so, Defendants effectively concede that if the Court instead applies the law of this Circuit, as it must, the requested injunction should issue. The Policy forces Plaintiffs to carry passports inconsistent with their sex, in violation of their constitutional rights to equal protection, travel, and informational privacy. Plaintiffs seek to redress these irreparable harms, caused by actions that are also arbitrary and capricious in violation of the APA, while this Court adjudicates Plaintiffs' claims. Defendants' Opposition offers no credible rebuttals, and instead mischaracterizes facts, repeats conclusions about sex that are unsupported and warrant heightened scrutiny, and contradict their post-hoc justifications. The temporary protection requested by Plaintiffs does not require Defendants to travel some uncharted course and would be achieved by a temporary reinstatement of the previous policy. Here, the balance is clear and favors Plaintiffs.

## ARGUMENT

I. **PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CONSTITUTIONAL CLAIMS.**

    A. **The Policy Violates Plaintiffs' Right to Equal Protection.**

        1. **Binding case law requires subjecting the Policy to heightened scrutiny.**

Defendants cannot evade the binding precedent of this Circuit any more than they can hide from the "textbook sex discrimination" and discrimination based on transgender status the Policy evinces. *Kadel v. Folwell*, 100 F.4th 122, 153 (4th Cir. 2024) (citation omitted); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 615 (4th Cir. 2020). Defendants' opinion that *Kadel* and *Grimm* were wrongly decided does not empower this Court to re-litigate or depart from their core

holdings. Opp. 8 n.4. Putting aside that the Policy cannot withstand any level of review, including rational basis, heightened scrutiny is without question warranted here because it discriminates based on both sex and transgender status.

Defendants' argument that the Policy does not discriminate because it applies to everyone was squarely rejected in *Kadel*. "This argument elides common sense and is inconsistent with Supreme Court precedent about how to approach equal-protection analyses. 'The proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant.'" *Kadel*, 100 F.4 at 147 (quoting *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015) (cleaned up)); *see also Powers v. Ohio*, 499 U.S. 400, 410 (1991); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 142 n.13 (1994) (rejecting "equal application" argument in the context of sex classifications). Equal protection rights are individually held and do not turn on group-based classifications. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 224 (1995). Plaintiffs' facts bring this principle to bear: according to Defendants' policy, Mr. Schlacter's passport can never have an "M" sex marker on it because he will always be the "historical" female sex he was assigned at birth. Were he assigned male at birth, he would have a passport reflecting his identity and how he lives his life and would not be before the court: "textbook sex discrimination." *Kadel* at 153.

Additionally, Defendants cannot overcome the Policy's perpetuation of impermissible sex-based stereotypes. It reflects *precisely* an "overbroad generalization[] about the way men and women are," namely, that their sexes are fixed for all time according to a doctor's pronouncement at the moment of birth. *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017); *see also Grimm*, 972 F.3d at 608 (policies that "punish transgender persons for gender non-conformity" with their sex assigned at birth "rely[] on sex stereotypes"); *M.A.B. v. Bd. of Educ. of Talbot Cnty.¸* 286 F. Supp. 3d 704, 719 (D. Md. 2018) (policies that are "based on biology alone" may constitute

impermissible sex stereotyping).

Neither can Defendants avoid heightened scrutiny for the Policy's discrimination based on transgender status by pointing to the Supreme Court's silence on the matter. Opp. 9-11. While the Sixth Circuit may have relied on that silence to reach a different conclusion, Defendants may not do so in light of *Kadel* and *Grimm*. *See Condon v. Haley*, 21 F. Supp. 3d 572, 587 (D.S.C. 2014) ("Coherent and consistent adjudication requires respect for … the basic rule that the decision of a federal circuit court of appeals left undisturbed by United States Supreme Court review is controlling on the lower courts within the circuit."). As this Court has recognized, it is unquestionable in this Circuit that policies that classify based on transgender status trigger heightened scrutiny. *See PFLAG, Inc. v. Trump*, No. 25-337-BAH, 2025 WL 685124, at *25 (D. Md. Mar. 4, 2025); *M.A.B.*, 286 F. Supp. 3d at 722. Defendants do not dispute that the Policy engages in transgender status discrimination—nor could they when the Policy's discrimination is plainly evident, denying passports consistent with gender identity only for transgender people and not cisgender people—and thus they cannot evade the application of heightened scrutiny.

Finally, the Policy's "singling out a certain class of citizens for disfavored legal status … is itself a denial of equal protection of the laws in the most literal sense," warranting more searching review. *Romer v. Evans*, 517 U.S. 620, 633 (1996).

## 2.    The Policy cannot survive any level of review.

Defendants' attempts to justify the Policy fail, whether under the heightened scrutiny applicable to the Policy's discrimination, or under less exacting review. Their argument that the Policy survives heightened scrutiny is rooted in justifications that are not "genuine," but rather "hypothesized or invented *post hoc* in response to litigation." *United States v. Virginia*, 518 U.S. 515, 533 (1996). They do not even attempt to justify the Policy based on the purposes set forth in the Gender Order or its critique of the prior policy, while simultaneously asserting that, because

of them, "the Department determined that it was appropriate to adopt instead the Executive Order's Directive." Declaration of Matthew Pierce ("Pierce Decl."), ECF 46-1, ¶ 17. The Policy has nothing whatsoever to do with the policy objectives identified in the Executive Order. Gender Order at 8165 (§ 1); *Orr v. Trump,* No. 1:25-cv-10313-JEK, 2025 WL 1145271, at *11 (D. Mass. Apr. 18, 2025) ("Any such argument would strain logic, and so it is not surprising that the government does not try to justify the Policy by reference to the stated purposes of the Executive Order.").

While the Court should not credit Defendants' post-hoc justification of ensuring "consistency, uniformity, and accuracy of basic historical facts about an individual"—a justification nowhere found in the Gender Order or the rest of the Policy—that justification nevertheless fails to satisfy intermediate scrutiny.[1] Defendants cite no problems presented by alleged inconsistencies between a passport sex marker and other government records. They do not identify a *single* problem presented by transgender Americans obtaining passports matching their gender identity for the last thirty-three years (or an "X" gender marker for the last two years). Nor do they acknowledge the inconsistency the Policy created between Plaintiffs' passports and their other documents, including drivers' licenses, birth certificates,[2] and social security records.[3]

Defendants have no answer to Plaintiffs' cases rejecting an interest in uniformity or administrative efficiency as sufficient to justify a denial of Equal Protection. Memo 23-25 (citing

---

[1] Defendants also assert that "passport data that does not accurately reflect biology" would not "be useful to foreign sovereigns." Opp. 21. This justification is entirely manufactured and based on no evidence. *Cf. Annex Books, Inc. v. City of Indianapolis, Ind.*, 581 F.3d 460, 463 (7th Cir. 2009) (when heightened scrutiny applies "there must be *evidence;* lawyers' talk is insufficient").

[2] States accounting for a majority of the U.S. population allow drivers' licenses and birth certificates to be changed to match a person's gender identity. Memo Ex. A-2.

[3] All Plaintiffs have state drivers' licenses and social security records consistent with their lived sex and all but two have updated birth certificates. *See* Declaration of Zander Schlacter, Memo Ex. E; Decl. of Lia Hepler Mackey, Memo Ex. F; Decl. of Jill Tran, Memo Ex. G; Decl. of Kris Koe, Memo Ex. H; Decl. of Peter Poe, Memo Ex. I; Decl. of David Doe, Memo Ex. J; Decl. of Robert Roe, Memo Ex. K.

cases). An unconstitutional policy is not made stronger by its uniform application across the government. The out-of-Circuit cases cited by Defendants offer little support, as they applied rational-basis review, and not the heightened scrutiny required here. Opp. 21. This interest simply does not "rank as an important governmental interest that can sustain the constitutionality of the Passport Policy." *Orr*, 2025 WL 1145271, at *11.[4]

Defendants also do not address the failure of the Policy to advance the very purpose for which identity documents exist—identity verification—simply stating without reference that it does so. Opp. 21. Nor do they answer the cases Plaintiffs cited rejecting policies prohibiting transgender people from changing their sex on government documents as inconsistent with any goal of verifying identity. Memo at 25-26.

The Policy's failure to advance these alleged justifications dooms it even under rational basis review, as the government "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational," *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985), and underscores that its true motive is animus. Defendants halfheartedly argue against this conclusion by claiming that the Court is unable to infer animus when the Policy can be justified by any legitimate purpose. Opp. 11-12. But no inferences need be drawn when the "bare … desire to harm a politically unpopular group" is on the face of the Policy. *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973); *see also Romer*, 517 U.S. at 633. Furthermore, Defendants have no response to the extensive evidence of animus towards transgender people underlying the Gender Order and Policy, Memo at 12-14, 22-23, and that was found by the courts in *Orr*, 2025 WL 1145271, at *14, *PFLAG*, 2025 WL 510050, at *19, and

---

[4] Defendants try to undermine *Orr*'s conclusion by pointing to its reliance on *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020). Opp. 21 n.9. But *Bostock*'s relevance goes to whether the Policy engages in sex discrimination, not the resulting application of heightened scrutiny. *Orr*, at *9. Further, Defendants' suggestion that *Bostock* is inapplicable in the Equal Protection context is squarely rejected by *Kadel*, 100 F.4th at 153-54.

*Talbott v. United States*, No. 25-cv-00240, 2025 WL 842332, at *31 (D.D.C. Mar. 18, 2025). Thus, the Policy "is a status-based enactment divorced from any factual context from which we could discern a relationship to legitimate state interests; it is a classification of persons undertaken for its own sake, something the Equal Protection Clause does not permit." *Romer*, 517 U.S. at 635.

> **B.      The Policy Violates Plaintiffs' Right to Travel.**

Defendants argue Plaintiffs lack standing because they possess a valid passport, have not shown sufficient injury, and have no constitutional right to travel. Opp. 12-14. In so arguing, Defendants misrepresent Plaintiffs' claims and cursorily dismiss binding law.

Plaintiffs are harmed, and face continued future injury, from passports that do not match their lived sex, and, though technically valid, are unusable. Memo. 16, 38-39. The State Department has routinely acknowledged that transgender travelers face increased risks of discrimination, harassment, and physical harm, including criminalization.[5] Defendants nonetheless ignore those realities as they apply to Plaintiffs who will be outed as transgender by their mismatched passports. Defendants have also not rebutted Plaintiffs' evidence demonstrating the psychological and dignitary harm caused by an incorrect passport. Memo 6-8, Ex. B-D. Plaintiffs are harmed whether they choose not to use their passport or present a passport that does not conform to their sex. *Id.* 5-9, 37-39, and Ex. B-D. Neither choice allows them freedom to travel without being subjected to unreasonable and unnecessary restrictions and harm and the imposition of an unconstitutional condition itself inflicts injury. *Cf. Patton v. State of North Carolina*, 381

---

[5] *See, e.g.*, U.S. State Department 2023 Country Reports on Human Rights Practices**,** U.S. Dep't of State (Apr. 22, 2024) for *Thailand* at 44 ("LGBTQI+ persons reported police and polling station workers questioned their identity because their appearance did not match the sex on their identification card."), *available at* https://tinyurl.com/2frehrna; for Turkey at 74-75 (citing state-sanctioned violence against LGBTQI+ people, including the routine imposition of reduced sentences for persons "who killed or assaulted LGBTQI+ individuals."), *available at* https://tinyurl.com/mpw2tewn; *see also* U.S. State Department 2023 Country Reports on Human Rights Practices for Saudi Arabia, *available at* https://tinyurl.com/yfhdynxz; for Nigeria, *available at* https://tinyurl.com/4697bwjf; for Uganda, *available at* https://tinyurl.com/2ajkr5nj; for Uruguay, *available at* https://tinyurl.com/3un7jv7r (all last accessed Jun. 11, 2025).

F.2d 636, 640 n.11 (4th Cir. 1967) ("Denying a benefit because of the exercise of a right in effect penalizes that exercise"). Plaintiffs' allegations establish Article III standing because theirs are not abstract or speculative harms; the right to travel is "a concrete interest with respect to which [Plaintiffs have been] personally subject to discriminatory treatment" by being forced to use incorrect passports leading to harms that some Plaintiffs experienced before the Policy existed, or forgo travel altogether. Memo 16-17, 30, 38-39; *Opiotennione v. Bozzuto Mgmt. Co.*, 130 F.4th 149, 156 (2025) (cleaned up); *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 274 (1st Cir. 2022), *vacated as moot*, 601 U.S. 1 (2023).

Defendants also assert that Plaintiffs possess "no Fifth Amendment right to travel internationally," and try to cabin the right to freedom of movement to domestic travel only. Opp. 14-17. Aside from ignoring that passports are also used for domestic travel, the cases Defendants rely on cannot bear their argument's weight. For example, *Haig v. Agee*'s discussion of the right to travel internationally as distinct from the right to interstate travel in that "it can be regulated within the bounds of due process" and as "subordinate to national security and foreign policy considerations" is more descriptive than doctrinal. 453 U.S. 280, 306-07 (1981) (quotation omitted). In assessing whether revocation of a passport violated the right, the Court justified its infringement on national security and foreign policy interests described as "compelling" and "of great importance," concluding that restricting Agee's foreign travel "plainly serve these interests." *Id*. at 307-08. The language Defendants rely on speaks to the deference the government justifications receive in these contexts, not to the diminishment of the right. *Cf. Turner v. Safley*, 482 U.S. 78, 94-99 (1987) (penological interests in security and rehabilitation justify substantial restrictions but cannot undermine the constitutional rights of incarcerated people); *Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019) (military "deference informs the application of"

heightened scrutiny, "but it does not displace" the underlying constitutional right). The same is true of Defendants' other cases. *See, e.g.*, *Zemel v. Rusk*, 381 U.S. 1, 14 (1965) (whether refusal of passport to travel to Cuba infringed liberty interests was "a function not only of the extent of the governmental restriction imposed, but also of the extent of the necessity for the restriction."); *Elhady v. Kable*, 993 F.3d 208, 220-24 (4th Cir. 2021) (describing interests underlying historical regulation of right to travel). Even by Defendants' own argument, the government can only impose "reasonable" restrictions on the right to travel. The Policy does not do so; rather, it imposes arbitrary and targeted restrictions which do far more than inconvenience Plaintiffs. Memo 27-28.

### C.    The Policy Violates Plaintiffs' Right to Privacy.

Defendants again try to avoid binding precedent supporting Plaintiffs' informational privacy claim. Rather than engaging with whether the Policy passes the test described in *Payne v. Taslimi*, 998 F.3d 648 (4th Cir. 2021), Defendants mischaracterize Plaintiffs' claim as a "new, unenumerated substantive due process right[]"—"the right to a passport conforming to one's gender identity." Opp. 17-18. Plaintiffs in no way seek to establish a new fundamental right, but instead to affirm their established right to informational privacy, which has long been squarely recognized and addressed by the Supreme Court, this Circuit, and courts across the country, including in circumstances nearly identical to those alleged by Plaintiffs. Memo 28-30 (citing cases). Because this right is well-established, Defendants' attempts to diminish the relevance and persuasiveness of cases like *Powell v. Schriver*, 175 F.3d 107 (2d Cir. 1999), and *Arroyo Gonzalez v. Rossello Nevares,* 305 F. Supp. 3d 327, 333 (D.P.R. 2018), for their "failure" to engage in the analysis required under *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), Opp. 18, must fail. A *Glucksberg* analysis is only necessary "when courts consider whether to recognize *new* fundamental rights." *Bostic v. Schaefer*, 760 F.3d 352, 376 (4th Cir. 2014) (emphasis added). The

right to privacy in *Powell*, *Arroyo*, and here, was the articulation of an already existing right.[6]

Defendants lack any informational privacy case employing the historical litmus test they urge in assessing whether informational privacy rights have been infringed. Doing so would lead to baffling results, irreconcilable with Circuit precedent. Even generously viewing this as step one of the test in *Walls v. City of Petersburg*, 895 F.2d 188, 192 (4th Cir. 1990), no court, including the Sixth Circuit in *Gore v. Lee*, 107 F.4th 548 (6th Cir. 2024), has conducted separate historical inquiries into whether a videotape of one's sexual assault, medical and physical health records, or personal financial information are the type of information about which a person has a reasonable expectation of privacy. *See Anderson v. Blake*, 469 F.3d 910, 915 (10th Cir. 2006); *United States v. Kravetz*, 706 F.3d 47, 63 (1st Cir. 2013); *Walls*, 895 F.2d at 194 (citations omitted). The principles safeguarded by the right to informational privacy remain steadfast and historically rooted; the precise information at issue and the medium through which it may be disclosed can change over time without altering the underling right. *See Gore* at 582 & n.8 (White, J., dissenting).

Defendants do not and cannot dispute that courts have already recognized that one's transgender status is "'excruciatingly private and intimate'" information. *Anderson*, 469 F.3d at 915; Memo 29-30. At root, Defendants' attempts to differentiate the disclosure of a person's transgender status, which implicates intimate physical characteristics and medical information, boils down to bald trivializing of Plaintiffs' significant privacy interests.[7] And as set forth *supra*, Defendants have failed to carry their burden to prove that a compelling governmental interest in disclosure outweighs those privacy interests. Plaintiffs are likely to succeed on the merits of their

---

[6] *Arroyo*'s citation to *Roe v. Wade*, 410 U.S. 113 (1973), does not negate its relevance despite *Roe* having been overturned. Opp. 18. *Arroyo* explicitly distinguished between the privacy right to "autonomy in making certain kinds of significant personal decisions" at issue in *Roe*, and that which "relates to ensuring confidentiality of personal matters," at issue here. 305 F. Supp. 3d at 332-33 (cleaned up). *Roe*'s overturning has no bearing on Plaintiffs' claims.
[7] Defendants' baseless reference to potentially "embarrassing" information about cosmetic surgery hypothetically arising from a passport's disclosure of the holder's birthdate, Opp. 17 n.8, is a demeaning comparison that in no way undermines Plaintiffs' significant privacy interests in their transgender status. Memo. 29-30.

informational privacy claim.

## II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR APA CLAIMS.

As with their response to Plaintiffs' Constitutional arguments, Defendants fail to engage with Plaintiffs' cited authority, which anticipated Defendants' arguments (rejected in *Orr*).[8]

### A.    The Policy Is Agency Action.

Defendants first argue that the Policy is not reviewable under the APA because it is presidential action. Opp. 26-27. That is wrong for the reasons described in *Orr*, 2025 WL 1145271, at *15, and Plaintiffs' opening brief. Memo. 32-34. President Trump did not change the passport application forms or provide instructions regarding the specifics of passport issuance; he delegated the implementation of the Gender Order to the State Department. Gender Order § 3(d); Pierce Decl., ¶¶ 12, 15. The State Department was required to "evaluat[e] how to implement" the Gender Order and looked to guidance from the Department of Health and Human Services (not the President) in defining "sex." Pierce Decl., ¶¶ 18, 13.

The facts here are similar to the recent decision in *Kingdom v. Trump*, No. 1:25-cv-00691-RCL, 2025 WL 1568238 (D.D.C. June 3, 2025). The district court recognized, consistent with the cases cited by Plaintiffs, that "where the President delegates the implementation of an executive order to an agency, that agency's actions are not derivatively shielded from APA review." *Id*. at *8; *accord* Memo. 33-34 (citing *Am. Fed'n of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, No. ELH-25-0596, 2025 WL 1206246, at *42 (D. Md. Apr. 17, 2025); *New York v. Trump*, 133 F.4th

---

[8] Defendants' complaint that the Motion for Preliminary Injunction relies on extra-record evidence, Opp. 25-26, is nonsensical. Plaintiffs cite only the Gender Order, Memo. Ex. 1, and leaked State Department memos explaining the Policy. *See* Memo. Exs. 29, 34. No other administrative records identify the reasons behind the Policy. The complained-of evidence is properly before the Court either because it is the administrative record or because there is no administrative record. *See Am. Federation of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. CV ELH-25-0596, 2025 WL 1206246, at *17 (D. Md. Apr. 17, 2025) (court may go outside the administrative record "if the record is inadequate or 'fail[s] to explain administrative action' and, as a result, 'frustrate[s] effective judicial review'") (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

51, 70 n.17 (1st Cir. 2025); and *State v. Su*, 121 F.4th 1, 15 (9th Cir. 2024)). The court rejected the government's argument that the Bureau of Prisons' actions were unreviewable presidential action because—just like the delegation to the Secretary of State at issue here—the "delegation plainly appears on the face of the Executive Order." 2025 WL 1568238, at *8.

Defendants' argument that State Department conduct is unreviewable "proves too much—it would allow the President and agencies to simply reframe agency action as orders or directives originating from the President to avoid APA review." *AIDS Vaccine Advoc. Coal. v. Dep't of State*, 766 F. Supp. 3d 74, 83 (D.D.C. 2025) (rejecting argument that executive order directing all agencies to halt foreign aid funding immunized the State Department's implementation from APA review). *Accord Chamber of Com. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996) ("[T]hat the Secretary's regulations are based on the President's Executive Order hardly seems to insulate them from judicial review under the APA[.]"); *see generally Ancient Coin Collectors Guild v. U.S. Customs & Border Prot., Dep't of Homeland Sec.*, 698 F.3d 171, 184 (4th Cir. 2012) (Fourth Circuit's review under the APA of actions by the State Department and Assistant Secretary of State "at the behest of the President"). Defendants cannot avoid decades of established administrative law via this sleight of hand.

Defendants rely primarily on the readily distinguishable case, *Detroit Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp. 3d 85, 100 (D.D.C. 2016). "In that case, Congress had delegated to the President power over final approvals of [certain] bridges, the President approved the bridge [being challenged], and State's actions were mere ministerial implementation of presidential action." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 314 (D.D.C. 2020) (distinguishing *Detroit Int'l Bridge*). As described above, and as recognized by *Orr*, "the State Department's implementation

11

of the President's Executive Order does not constitute a 'ministerial act' in which 'nothing is left to the exercise of the official's discretion or judgment.'" 2025 WL 1145271, at *16.[9]

### B.    The Policy Is Reviewable.

Defendants argue that the Policy is unreviewable because decisions regarding passports are committed to agency discretion, but cite no case so holding and have no answer to Plaintiffs' citations where State Department's decisions relating to passports were reviewed. *See* Memo. 32-35; *Kent v. Dulles,* 357 U.S. 116, 128-129 (1958); *Zzyym v. Pompeo*, 958 F.3d 1014, 1024-25 (10th Cir. 2020); *Orr*, 2025 WL 1145271, at *16; *see also Shachtman v. Dulles*, 225 F.2d 938, 940-41 (D.C. Cir. 1955) (finding that "the discretion residing in the Secretary [under 22 U.S.C. § 211a] is subject in its exercise to some judicial scrutiny"). Courts are justifiably hostile to arguments that agency action is unreviewable, as there is a "strong presumption that Congress intends judicial review of administrative action," *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). Nothing here overcomes that presumption.

Nor is the Policy unreviewable because it involves foreign affairs. Opp. 28-29. Defendants never explain how a passport sex marker involves, or is justified by, foreign relations, and neither does the Gender Order. *See Orr*, 2025 WL 1145271, at *18-19. Again, Defendants cite no case holding that State Department decisions regarding passports are unreviewable on this basis and have no answer to *Kent*, *Zzyym*, or *Shachtman* in reviewing such decisions. Defendants attempt to

---

[9] Defendants acknowledge that the D.C. Circuit assumed the State Department's actions were reviewable under the APA in *Detroit International Bridge*, Opp. 29 n.10, so it is not clear that the reasoning in the district court's opinion is good law even in the District of Columbia. Defendants also concede that the Fourth Circuit did not adopt the district court's reasoning in *Ancient Coin Collectors Guild v. U.S. Customs & Border Prot., Dep't of Homeland Sec.*, 801 F. Supp. 2d 383, 403 (D. Md. 2011), conducting a review of State Department actions on behalf of the President under the APA. Opp. 29 n.10 (citing 698 F.3d at 184 ("the governmental actions challenged herein did not run afoul of any APA standard")). *See also Int'l Refugee Assistance Project v. Trump*, 373 F. Supp. 3d 650, 662 (D. Md. 2019) (noting that "the Fourth Circuit did not endorse the view that APA review of agency action is unavailable when the agency acts at the direction of the President and instead conducted an APA review and affirmed on the grounds that the action was not arbitrary and capricious."), *rev'd and remanded on other grounds*, 961 F.3d 635 (4th Cir. 2020).

distinguish *Zemel* because it involved whether a passport would be issued at all, rather than the content of a passport. Opp. 29. But that distinction is irrelevant; *Zemel* distinguished cases involving a "characteristic peculiar to appellant" from those implicating "policy considerations affecting all citizens," 381 U.S. at 13, and that distinction is relevant here.

### C.    The Policy is Unlawful and is Arbitrary and Capricious.

Defendants do not dispute that the Policy is final agency action; it therefore violates the APA if the Court finds that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A), (D). Because the Policy violates the Constitution, it violates the APA. 5 U.S.C. § 706(2)(B).

The Policy is also arbitrary and capricious. Defendants make much of the deferential standard of review under the APA, but concede—as they must—that judicial review must be based upon the record before the agency at the time it made its decision. 5 U.S.C. § 706; *Trinity Am. Corp. v. U.S. Envtl. Prot. Agency*, 150 F.3d 389, 401 n.4 (4th Cir.1998) ("Review of agency action is limited to the administrative record before the agency when it makes its decision."). Yet, Defendants do not and cannot point to any "record" before the agency before it made its decision, other than the Gender Order.[10] The Policy "does not make factual findings, does not explain why the facts supporting the Department's prior passport policy no longer carry weight, and does not address reliance interests affected by its reversal of the prior policy." *Orr*, 2025 WL 1145271, at *18. *Cf. Schiff v. U.S. Off. of Pers. Mgmt.*, No. 25-10595-LTS, 2025 WL 1481997 (D. Mass. May 23, 2025) ("the time and manner in which the defendants implemented the EO belies any plausible claim that the agencies acted in anything but an arbitrary and capricious way").

---

[10] The Pierce Declaration is not part of the administrative record. Courts may consider "affidavits not contained in the agency record where there was such failure to explain administrative action as to frustrate effective judicial review. However, such post-hoc materials must only provide background information or evidence of whether all relevant factors were examined by an agency, or be merely explanatory of the original record and contain no new rationalizations." *Roe v. Dep't of Def.*, 947 F.3d 207, 221 (4th Cir. 2020), *as amended* (Jan. 14, 2020) (cleaned up).

Instead of building a factual record, the Policy merely states that the changes are made pursuant to the Gender Order, and Defendants are relegated to arguing that "it is reasonable for the Department to follow the President's directive." Opp. 31. "We were just following orders" has not been a justification since at least 1945,[11] and, as discussed above, the APA contains no exemption from judicial review when agencies do what the President tells them. *See State v. Su*, 121 F.4th at 15; *Chamber of Com. v. Reich*, 74 F.3d at 1327; *Ancient Coin Collectors Guild*, 698 F.3d at 184; *AIDS Vaccine Advoc. Coal.*, 766 F. Supp. 3d at 83 (all reviewing under the APA agency action pursuant to an executive order). Plaintiffs are likely to prevail on their APA claim.

## III.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM.

Defendants dismiss Plaintiffs' injuries as "speculative," but courts have consistently recognized that the denial of accurate identity documents causes ongoing, irreparable harm. *See, e.g.*, *Ray v. McCloud*, 507 F. Supp. 3d 925, 937 (S.D. Ohio 2020). The harm is not hypothetical— it is daily, personal, and deeply injurious to Plaintiffs' dignity and safety. Memo. 37-39.

## IV.     THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR PLAINTIFFS.

Defendants' claim that granting Plaintiffs' motion would constitute "final relief" is overstated. Courts routinely grant preliminary injunctions that provide interim access to benefits or documents pending final adjudication. *See Doe v. Trump*, 275 F. Supp. 3d 167, 217 (D.D.C. 2017). The injunction would preserve the status quo ante—Plaintiffs' access to correct identification, ability to decide when and with whom to share their transgender status, and freedom

---

[11] *See* Agreement for the Prosecution and Punishment of the Major War Criminals of the European Axis art. 8, Aug. 8, 1945, 82 U.N.T.S. 279 ("The fact that the Defendant acted pursuant to order of his Government or of a superior shall not free him from responsibility . . . "), *available at* https://tinyurl.com/2u8hyz3n.

from additional screening, discrimination, and harassment—while the Court considers the merits and the broader relief requested by Plaintiffs.[12]

Similarly, Defendants' administrative concerns are speculative and negated by history. The Department had a well-established process for providing passports consistent with applicants' gender identity. Any suggestion that temporarily reverting to the status quo ante for seven people would lead to a flood of inconsistent applications is baseless. As addressed above, and despite decades of issuing accurate passports to transgender people, when asked to identify harms it would suffer if it were to do so again, the government points only to straw men. If such imagination is required, it demonstrates that there is no harm in granting the requested relief.

Finally, the public interest is best served by upholding constitutional protections. *See G.G. v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 728 (4th Cir. 2016), vacated on other grounds, 137 S. Ct. 1239 (2017). Weighing the ongoing and future harms to Plaintiffs against the miniscule costs of a temporary extension of long-standing policy is not a close call. Defendants' arguments fail to overcome the compelling equities and constitutional interests at stake.

## CONCLUSION

Plaintiffs respectfully request that the Court enter the relief requested in their Motion.

---

[12] Contrary to Defendants' nine pages arguing about the implications of universal injunctions, Plaintiffs have not asked the Court for universal preliminary injunctive relief. Plaintiffs' proposed order, ECF 31-1, would provide relief only to the seven Plaintiffs.

Dated: June 11, 2025

Respectfully submitted,

*/s/ Jonathan I. Gleklen*
Jonathan I. Gleklen, Bar No. 21350
Karen Vincent (of counsel)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001
Tel: (202) 942-5454
Fax: (202) 942-5999
jonathan.gleklen@arnoldporter.com
karen.vincent@arnoldporter.com

Lori Leskin*
Mindy Gorin (of counsel)
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8541
Fax: (212) 836-8689
lori.leskin@arnoldporter.com
mindy.gorin@arnoldporter.com

Allissa Pollard*
Hannah Sibiski*
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street, Ste. 4000
Houston, TX 77002
Tel.: (713) 576-2451
Fax: (713) 576-2499
allissa.pollard@arnoldporter.com
hannah.sibiski@arnoldporter.com

Liz Lindquist (of counsel)
Arnold & Porter Kaye Scholer LLP
1144 Fifteenth Street | Suite 3100
Denver, CO 80202-2848
Tel: (303) 863-2387
Fax: (303) 863-2301
Liz.Lindquist@arnoldporter.com

Carl S. Charles*
Lambda Legal Defense
and Education Fund, Inc.
1 West Court Square, Suite 105
Decatur, GA 30030
Tel: (404) 897-1880
Fax: (855) 535-2236
ccharles@lambdalegal.org

Karen L. Loewy*
Lambda Legal Defense
and Education Fund, Inc.
815 16th Street NW, Suite 4140
Washington, DC 20006
Tel: (202) 804-6245
Fax: (855) 535-2236
kloewy@lambdalegal.org

Peter Renn*
Lambda Legal Defense
and Education Fund, Inc.
800 South Figueroa Street, Suite 1260
Los Angeles, CA 90017
Tel: (213) 382-7600
Fax: (855) 535-2236
prenn@lambdalegal.org

Omar Gonzalez-Pagan*
Luna Isaiah Floyd*
Lambda Legal Defense
and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY 10005
Tel: (212) 809-8585
Fax: (855) 535-2236
ogonzalez-pagan@lambdalegal.org
lfloyd@lambdalegal.org

* Counsel for Plaintiffs admitted *pro hac vice*