# EXHIBIT B

*Doe v. State of South Carolina*, No. 25-1787, 2025 WL 2375386 (4th Cir. Aug. 15, 2025)

FILED:  August 15, 2025

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 25-1787
(2:24-cv-06420-RMG)

———————————

JOHN DOE, a minor, by his parents and next friends; JIM DOE, parental natural
guardian; JANE DOE, parental natural guardian,

       Plaintiffs – Appellants,

and

THE ALLIANCE FOR FULL ACCEPTANCE,

       Plaintiff,

v.

STATE OF SOUTH CAROLINA; SOUTH CAROLINA STATE BOARD OF
EDUCATION; SOUTH CAROLINA DEPARTMENT OF EDUCATION; BERKELEY
COUNTY SCHOOL DISTRICT; ELLEN WEAVER, in her official capacity as South
Carolina Superintendent of Education; ANTHONY DIXON, in his official capacity as
Superintendent of Berkeley County School District,

       Defendants – Appellees.

———————————

A M E N D E D   O R D E R

———————————

Upon consideration of the submissions relative to appellants' motion for an
injunction pending appeal and motion to expedite the appeal, the court grants the motion
for an injunction pending appeal and denies the motion to expedite the appeal.  Appellees

are enjoined from enforcing compliance with the ban on transgender students using restrooms that match their gender identities during the pendency of this appeal only as it applies to appellant Doe. Further, upon consideration of appellees' motion to dismiss the appeal, the court denies the motion.

On August 12, 2025, we entered an order resolving three motions that had been filed in this case that is still in the merits briefing stage. In this amended order, we explain the basis for our decision.

## I.

In its 2024–2025 and 2025–2026 budget appropriations bills, the South Carolina legislature included substantively identical provisos that, in relevant part, provide that public school multi-stall restrooms "designated for one sex shall be used only by members for one sex" ("the Proviso").[1] *Compare* H. 5100, Appropriation Bill 2024–2025, Part IB § 1.120 (Act No. 226, 2024 S.C. Acts), *with* H. 4025, Appropriation Bill 2025–2026, Part IB § 1.114 (Act No. 69, 2025 S.C. Acts). The Proviso further defines "sex" to mean "a person's biological sex, either male or female, as objectively determined by anatomy and genetics existing at the time of birth." *Compare* H. 5100, Appropriation Bill 2024–2025, Part IB §

---

[1] No factfinding has occurred yet in this case, nor does our decision to grant a preliminary injunction pending appeal turn on resolution of any disputed facts. *See Elrod v. Burns*, 427 U.S. 347, 250 n.1 (1976) (stating, that for purposes of resolving a motion for a preliminary injunction, courts take as true "all of the well-pleaded allegations of [the] complaint and uncontroverted affidavits filed in support"). We therefore recite the underlying events as presented in the complaint and related district court filings.

1.120 (Act No. 226, 2024 S.C. Acts), *with* H. 4025, Appropriation Bill 2025–2026, Part IB

§ 1.114 (Act No. 69, 2025 S.C. Acts). The Proviso incentivizes school districts to comply

with the Proviso by withholding 25% of state funds appropriated to them if they fail to do

so. *Compare* H. 5100, Appropriation Bill 2024–2025, Part IB § 1.120 (Act No. 226, 2024

S.C. Acts), *with* H. 4025, Appropriation Bill 2025–2026, Part IB § 1.114 (Act No. 69, 2025

S.C. Acts). The Governor signed both bills, and the South Carolina Department of

Education has issued guidance instructing school districts about the Proviso and reminding

them that the Proviso will be enforced against non-compliant schools.[2]

When the Proviso was first enacted last year, "John Doe," a minor, was an eighth-

grade student enrolled at a public school in Berkeley County, South Carolina.[3] Under the

Proviso's definitions, Doe was classified as a "female" and thus prohibited from using the

boys' multi-stall restrooms in public school. But early in the last school year Doe, whose

"gender identity is male" and "now lives consistently with his male gender identity in all

aspects of life," used the boys' multi-stall restrooms. App. 24 (Compl. ¶ 46). For that

conduct, Doe was reprimanded by teachers and administrators and eventually suspended

---

[2] The challenged Proviso was first enacted as part of the appropriations bill for the 2024–2025 fiscal year, which ran from July 1, 2024, to June 30, 2025. *See* S.C. Code § 11-9-80. At that time, the challenged language was found at Proviso 1.120. H. 5100, Appropriation Bill 2024–2025, Part IB § 1.120 (Act No. 226, 2024 S.C. Acts). The 2025–2026 appropriations bill (July 1, 2025, to June 30, 2026) contains the substantively identical challenged language at Proviso 1.114. H. 4025, Appropriation Bill 2025–2026, Part IB § 1.114 (Act No. 69, 2025 S.C. Acts).

[3] The district court granted Doe and Doe's parents ("Jim and Jane Doe") leave to proceed pseudonymously, and we use the same names they have adopted for purposes of this litigation.

for one day. Doe and Doe's parents were informed that, should Doe continue to use the boys' multi-stall restrooms, penalties would continue to be assessed or Doe could be expelled.

In light of those actions, Doe's parents withdrew Doe from in-person public school and pursued online educational opportunities for the remainder of the academic year. Doe's performance suffered and the family considered the educational and social opportunities afforded through the online school experience to be inferior to attending public school in person.

After weighing their options, the Does have decided to re-enroll Doe in public high school for the 2025–2026 academic year. Based on representations to the Court, the first day of Doe's school year was this past Wednesday, August 13, 2025.

This litigation began shortly after Doe withdrew from public school in the fall of 2024. Doe, "through his parents," filed a complaint in the U.S. District Court for the District of South Carolina alleging that the Proviso violated Title IX and the Equal Protection Clause by "forbid[ding] transgender students from using restrooms consistent with their gender identities." App. 14 (Compl. ¶ 1).[4] As support for these claims, the complaint points

---

[4] A co-plaintiff in the case is a South Carolina advocacy group the Alliance for Full Acceptance, and the complaint was filed as a putative class action. The appeal pending before this Court—and thus the motion we now consider—has been filed solely by the Does. Docketing Statement, Docket No. 1.

The named defendants are the State of South Carolina, the State Board of Education, the State Department of Education, the Berkeley County School District, the Superintendent of the South Carolina Department of Education (official capacity), and the Superintendent of the Berkeley County School District (official capacity). For simplicity, we refer to them collectively as "South Carolina" or "the State."

to this Court's 2020 decision in *Grimm v. Gloucester County School Board*. 972 F.3d 586 (4th Cir. 2020), *cert. denied* 141 S. Ct. 2878 (2021), which held that a public school board's policy of requiring transgender students to use multi-stall "restrooms matching their 'biological gender'" violated Title IX and the Equal Protection Clause. *Id.* at 593–94. Two days after filing the complaint, Doe moved for a preliminary injunction to enjoin enforcement of the Proviso. Briefing on that motion was completed by February 2025. Briefing on the State's motion to dismiss the complaint wrapped up in late March 2025.

By June 2025, the district court had yet to rule on either motion, and Doe moved to file an amended complaint and amended motion for a preliminary injunction. The proposed amendments to both filings did not add new claims or alter the substance of Doe's arguments, but instead updated the factual allegations to refer to the 2025–2026 iteration of the Proviso and note Doe's decision to re-enroll in a Berkeley County public high school for the upcoming school year. On the first day of the new fiscal year, Doe filed a renewed motion for a preliminary injunction, which Doe clarified was being filed in an abundance of caution given the court's failure to act on any of the pending motions, as well as the fact that the 2025–2026 budget contained the now-operative Proviso that Doe sought to challenge and enjoin in this litigation.

On July 8, 2025, the district court stayed the entire case. In its view, the Supreme Court's July 1 decision to grant *certiorari* in *West Virginia v. B.P.J.*, No. 24-43, as well as other developments in this area of the law over the past year rendered *Grimm* "unsettled" precedent. App. 293 (Dist. Ct. ECF No. 92, at 2). Given that the Supreme Court could be poised to issue a decision within the coming year that had "the potential of bringing clarity

and providing guidance" in this case, the district court concluded that staying the action best promoted judicial economy. *Id.* Consistent with that decision, it ordered that "[a]ll pending motions (Dkt. Nos. 51, 80, 85, 86, 87, 88, and 90) are denied without prejudice and with leave to restore and/or supplement once the United States Supreme Court rules in *B.P.J.* or the Supreme Court's 2025-2026 term ends, whichever is sooner." App. 295 (Dist. Ct. ECF No. 92, at 4 n.3). The parties were instructed to file their views of the effect of any Supreme Court action in *B.P.J.* within 15 days of a decision or the end of the court's term. *Id.* (Dist. Ct. ECF No. 92, at 4).[5]

Doe noted an appeal of the district court's order and moved for a preliminary injunction pending appeal. The district court denied the motion based substantially on the same reasoning it provided when staying the action. In its view, Doe could not meet the requirement of forecasting a "clear showing" of entitlement to the relief sought given the "significant recent legal developments in the Supreme Court" that "appear[ed] to either reject or bring into question" this Court's decision in *Grimm*. Dist. Ct. ECF No. 103, at 4.

Although our Court issued a briefing schedule that would, in the ordinary course, be completed in early October 2025, the parties filed three motions in this Court that could have altered that trajectory. Initially, Doe moved for an injunction pending appeal, for

---

[5] The district court issued one written order that is reflected on two separate docket entries. Docket Number 92, containing the written order, notes that the district court granted the stay. Docket Number 93 notes that it is related to the prior order and substantively reflects the footnote in the written order denying the pending motions. Since both docket entries' substance appears in the text of the sole written order and their contents do not materially differ, we refer to the district court's action being appealed from as the entry of a single order.

expedited briefing, and for a decision without oral argument. The State moved to dismiss the appeal. As reflected by our August 12 order, we granted Doe's motion for an injunction pending appeal, but denied the other two motions.

## II.

### A.  The State's Motion to Dismiss

We first address South Carolina's motion to dismiss the appeal because, if granted, it would negate the need to consider Doe's motions. The State argued that we should dismiss this appeal on two separate grounds, first for lack of appellate jurisdiction and second because Doe lacks standing. We reject both arguments.

### 1.  Appellate Jurisdiction

"Appellate courts generally only review 'final decisions of the district courts.'" *In re Grand Jury 2021 Subpoenas*, 87 F.4th 229, 244 (4th Cir. 2023) (quoting 28 U.S.C. § 1291). But under 28 U.S.C. § 1292(a)(1), we also have jurisdiction to consider interlocutory appeals from "orders of the district courts . . . refusing . . . injunctions." This statute confers jurisdiction over orders expressly denying an injunction as well as those orders that have the "practical effect" of doing so. *A.A.R.P. v. Trump*, 605 U.S. ---, 145 S. Ct. 1364, 1367 (2025) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981)). In considering whether we have jurisdiction under § 1292(a)(1), we can look beyond the "label ascribed to" a district court's order to determine whether it "amounts to an injunction" insofar as it (1) has the "practical effect" of a decision about whether to award an injunction; (2) results in "serious, perhaps irreparable consequences"; and (3) could

"only be 'effectually challenged' through immediate appeal.'" *Selective Ins. Co. of Am. v. Westfield Ins. Co.*, 73 F.4th 239, 243 (4th Cir. 2023) (cleaned up).

Beyond § 1292(a)(1)'s own jurisdictional grant, we also have authority to exercise pendent appellate jurisdiction to review "issues that are not otherwise subject to immediate appeal when such issues are so interconnected with immediately appealable [ones] that they warrant concurrent review," such as when an issue is "inextricably intertwined" with an order "that is the proper subject of an immediate appeal" or when review is "'necessary to ensure meaningful review' of an immediately appealable issue." *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 622 (4th Cir. 2018) (quoting *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006)); *see also NationsBank Corp. v. Herman*, 174 F.3d 424, 427 (4th Cir. 1999) (concluding that because the Court had jurisdiction over an interlocutory order granting an injunction, it could also exercise jurisdiction over the denial of summary judgment—something not ordinarily reviewable on interlocutory appeal—because it was "intimately bound up with" the decision to grant injunctive relief).

Applying these principles here, we have jurisdiction over the district court's order. By its plain terms, the district court expressly denied Doe's then-pending motions for preliminary injunctive relief when it denied "[a]ll pending motions." App. 295 (Dist. Ct. ECF No. 92, at 4 n.3). Indeed, in the same sentence, the district court specifically designated Doe's renewed motion for a preliminary injunction by docket number as one of the pending motions it was denying: "(Dkt. Nos. . . . 88". *Id.* The court's explicit denial of Doe's renewed motion satisfies the plain language of § 1292(a)(1), allowing us to exercise

appellate jurisdiction over that decision.[6] What's more, the district court's twice-repeated indication that "*[a]ll* pending motions" were "denied" provides additional basis for us to conclude that the district court (1) believed that the renewed motion superseded the original one, making it unnecessary to rule on both, or (2) also denied Doe's original motion for a preliminary injunction, an act that would also expressly be the refusal of an injunction to which §1292(a)(1) applies. App. 295 (Dist. Ct. ECF No. 92, at 4 n.3) (emphasis added).[7]

And because we have jurisdiction over the court's denial of a preliminary injunction based on § 1292(a)(1), we also have pendent jurisdiction to consider the court's "inextricably intertwined" decision to stay any additional proceedings in this action.

---

[6] We are also not persuaded that the district court's denial of the pending motions "without prejudice" and without expressly ruling on the merits of relief precludes us from exercising appellate jurisdiction. The district court's order makes it clear that it would not entertain a refiled motion until after the first of the two events it described. Thus, for the same reasons fleshed out in the context of a *Carson* analysis, the denial "without prejudice" here does not make the district court's order any less of a refusal to grant an injunction for purposes of § 1292(a)(1). *See Everett v. Pitt Cnty. Bd. of Educ.*, 678 F.3d 281, 288 (4th Cir. 2012) (finding appellate jurisdiction under § 1292(a)(1) over the district court's order temporarily denying an injunction on procedural grounds even though the court had explicitly said it would take up the issue again on the merits in a few more months).

[7] Neither party asked the district court to clarify its order. South Carolina contends we should nonetheless conclude that the district court agrees with it that Doe's original motion for a preliminary injunction is still pending before that court because the State had, in its opposition to the motion for an injunction pending appeal, expressed its view that the original motion was still pending and the court did not say otherwise in its subsequent order. We decline to do so. Doe had asserted the exact opposite conclusion—that the district court's reference to "all" meant both motions were denied—when moving in the district court for an injunction pending appeal. The district court's order denying an injunction pending appeal did not explicitly respond to either parties' contention, so nothing more can be gleaned from its silence other than that it declined to engage with that debate.

*Rainbow Sch., Inc*, 887 F.3d at 622 (quoting *Rux*, 461 F.3d at 475); *see also NationsBank Corp.*, 174 F.3d at 427.

Even if there is some ambiguity in the district court's challenged actions, we would conclude under *Carson* that we have jurisdiction based on the totality of the actions denying "[a]ll pending motions" for the same period of time during which it simultaneously stayed all proceedings. The district court could not have been clearer that it would not consider the merits of any pending or re-filed motion for injunctive relief until the Supreme Court takes action in *B.P.J.* or the end of that Court's 2025–2026 term, whichever is earlier. In practical terms, the district court's order thus means that Doe cannot have any request for injunctive relief considered on the merits in the district court for most, if not all, of the 2025–2026 academic year.[8] The combined effect of a delay of this length coupled with its particular effect in this case—where Doe's claims allege a constitutional violation

---

[8] The Supreme Court granted *certiorari* in *B.P.J.* on July 3, 2025, and at present, merits briefing is not set to conclude until November 2025 with oral argument (as-yet unscheduled) to follow in early 2026. *West Virginia v. B.P.J.*, No. 24-43. Barring an unforeseen procedural dismissal, that places any merits decision likely to be issued in May or June 2026. Indeed, given the nature of this case and that *B.P.J.* will be considered alongside another case involving related issues, *Little v. Hecox*, No. 24-38, late June 2026 is a reasonable expectation. *Supreme Court Procedures*, https://www.uscourts.gov/about-federal-courts/educational-resources/about-educational-outreach/activity-resources/supreme-court-procedures [https://perma.cc/9CE9-KAHF] ("All opinions of the Court are, typically, handed down by the last day of the Court's term (the day in late June/early July when the Court recesses for the summer). With the exception of this deadline, there are no rules concerning when decisions must be released. . . . [S]ome controversial opinions, even if heard in October, may not be handed down until the last day of the term.") (last visited Aug. 14, 2025).

occurring daily during the school year and the injunction sought would relieve that violation—has the practical effect of refusing an injunction. In addition, the court's order imposes "serious, perhaps irreparable consequences" given the alleged harms and this Circuit's binding case law (discussed below). *Selective Ins. Co. of Am.*, 73 F.4th at 243 (cleaned up). Moreover, failing to exercise jurisdiction now would render the district court's order effectively unreviewable until as late as June 2026, too late to afford Doe any consideration of the request for an injunction during the current school year. Under similar circumstances, where the district court's refusal to act on a requested injunction in a timely manner constructively denied the motion, the Supreme Court has held that appellate jurisdiction lies under § 1292(a)(1). *See A.A.R.P.*, 145 S. Ct. at 1367 (explaining that "inaction in the face of extreme urgency . . . may have the effect of refusing an injunction").

Last, we note that even if the district court's decision to stay for some reason did not satisfy *Carson*, we could still exercise pendent appellate jurisdiction over that issue as part of our consideration of the district court's decision to deny Doe's requested preliminary injunction. Because the denial of injunctive relief cleanly falls under § 1292(a)—and thus is a decision "that is the proper subject of an immediate appeal"—we can also consider issues "inextricably intertwined," *Rainbow School*, 887 F.3d at 622, or "intimately bound up with," *NationsBank Corp.*, 174 F.3d at 427, it. Here, the district court's decision to stay meets this requirement. If it did not, then as some of our sister circuits have recognized, "the denial of the preliminary injunction would be effectively unappealable because a reversal on that issue would have no effect. Our mandate would return to a black hole. A stay should not insulate the denial of a request for preliminary injunction from appellate

review in this way. [And] the denial of the preliminary injunction and the stay must be considered together." *Proctor & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 847 (Fed. Cir. 2008) (quoting *Privitera v. Cal. Bd. of Med. Quality Assurance*, 926 F.2d 890, 892–93 (9th Cir. 1991)); *see also Cedar Coal Co. v. United Mine Workers of Am.*, 560 F.2d 1153, 1162 (4th Cir. 1977) (holding that the district court's decision to indefinitely continue the matter of whether to grant an injunction was appealable under § 1292(a) because holding otherwise "would permit a plain denial of even the bare consideration of whether to consider injunctive relief to go unaccounted for").

For these reasons, we conclude that we have jurisdiction over the district court's decisions to deny Doe's requests for a preliminary injunction and to stay the action. We turn next to the State's contention that Doe lacks Article III standing.

## 2. Standing

Doe had Article III standing to file the complaint.[9] Under the familiar framework, to have Article III standing, a plaintiff must plausibly allege: "(1) [] an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At this early stage of the litigation, "general factual allegations of injury resulting

---

[9] Doe urges us to conclude that the State has forfeited this argument by failing to develop it in its briefing and, instead, incorporating by reference arguments about standing made in the motion to dismiss filed in the district court. While the State's method is disfavored, standing goes to a federal court's power to hear a case under Article III. We must therefore consider it *sua sponte*, so we will briefly address why we believe Doe has made a sufficient showing of standing to survive a motion to dismiss the appeal. *E.g.*, *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020).

from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up).

Generally speaking, standing is determined as of the day a complaint is filed. *West Virginia v. EPA*, 597 U.S. 697, 718 (2022). First, Doe alleged an injury in fact, i.e., "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.*, 578 U.S. at 339 (cleaned up). Doe alleged that the State's enactment and promise to enforce the Proviso restricted Doe from using the boys' multi-stall bathrooms. Further, Doe alleged that the Proviso led not only to formal punishment from school administrators, but also led Doe to withdraw and seek alternative schooling options despite a desire to re-enroll in in-person public schools without being subject to the Proviso. Last, Doe alleged that the State was actively seeking to enforce the Proviso, which demonstrates a likelihood of an ongoing or future injury in fact. *See Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (stating that to demonstrate standing to obtain declaratory and injunctive relief, a plaintiff must make a showing of "an ongoing or future injury in fact"). These allegations adequately demonstrated an injury in fact.[10]

---

[10] The State makes much of Doe's original complaint being based on the 2024–2025 iteration of the Proviso and seeking to enjoin its enforcement during that year. To be sure, the earlier Proviso did lapse at the end of the last fiscal year. But Doe sought to amend both the complaint and the motion for a preliminary injunction to include the uncontested reality that the State has enacted a substantially identical Proviso for the 2025–2026 fiscal year. The district court did not act on those motions and instead denied them as part of its order staying the action. Doe's proposed amendments would cure any perceived deficiency in (Continued)

Next, the same allegations satisfy Doe's burden of alleging "a causal connection between the injury and the conduct complained of," i.e., of showing standing's fair traceability prong. *Lujan*, 504 U.S. at 560. The Proviso is plainly linked to at least some of Doe's asserted injuries, even if enjoining the Proviso would not eliminate all potential sources of potential harassment. That's sufficient to meet this requirement.

Third, and last, Doe has adequately alleged redressability, that "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (cleaned up). Given the State's past enforcement of the Proviso against Doe and its repeated commitment to its implementation throughout its public schools, Doe has adequately alleged "a real or immediate threat" of being "wronged again" absent judicial intervention upon returning to in-person public schools. *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023). That's sufficient to allege redressability and, in turn, satisfies all three prongs for purposes of meeting Doe's burden to allege facts supporting standing at this stage of the proceedings.

The State raises one final argument in favor of its contention that the appeal should be dismissed for lack of standing. Namely, it contends that even if Doe had standing to file the operative complaint, Doe has not been aggrieved by the district court's challenged order and thus "lacks standing to pursue this appeal." Appellee's Combined Mot. to Dismiss &

---

the complaint and would therefore have the effect of curing any perceived jurisdictional deficiencies as well. *See Holloway v. City of Virginia Beach*, 42 F.4th 266, 277–78 (4th Cir. 2022). Resolution of the issues the State raises is best left to the panel considering the merits of Doe's appeal, but they are not grounds for dismissing it outright at this stage.

Response, Docket No. 36, at 13. That argument centers on distinctions between the operative complaint and the court's failure to grant leave to amend the pleading to account for the new fiscal year's budget proviso and Doe's plans for the 2025–2026 school year. The State contends that this lapse in time and the operative complaint's failure to raise sufficient allegations related to the 2025–2026 school year mean that Doe now lacks standing to appeal the district court's refusal to enter an injunction covering the current time frame. We are not persuaded that these differences cause Doe to "lose" standing for purposes of this appeal. *See, e.g.*, *Deal v. Mercer Cnty Bd. of Educ.*, 911 F.3d 183, 187–90 (4th Cir. 2018) (recognizing, in the context of a student's religious freedom claims, that the student had standing to pursue her claims even after withdrawing from public school as a result of the state defendant's allegedly unconstitutional practices in school and that she did not have to expressly state in her complaint that she would reenroll if an injunction were granted).

The State's arguments ignore that Doe moved for leave to amend to provide the very updates that it contends needed to occur, but the district court denied them as part of its decision to stay the proceedings. Even more damaging to the State's assertions, Doe's operative complaint requested relief beyond enjoining last year's iteration of the Proviso as Doe alleged that "[i]f [the school] permitted [Doe] to use restrooms that correspond with his gender identity, [then Doe] would like to re-enroll, and [Doe's] parents would support his decision." App. 28 (Compl.¶ 72). The operative complaint thus adequately forecasts how the district court's challenged decisions allegedly aggrieve Doe to this day. That's enough to show Doe possesses standing to bring this appeal—simply put, Doe has been

aggrieved by the district court's challenged order and that's sufficient under Supreme Court precedent. *West Virginia*, 597 U.S. at 718 (2022) ("In considering a litigant's standing to appeal, the question is whether it has experienced an injury 'fairly traceable to the judgment below.' If so, and a favorable ruling from the appellate court would redress that injury, then the appellant has a cognizable Article III stake [in the appeal]." (citation omitted)).

For all the reasons provided above, we deny the State's motion to dismiss the appeal.

## B.  Doe's Motions

We next address Doe's motions for an injunction pending appeal and to expedite the appeal.

The Court considers four factors in deciding whether to issue a preliminary injunction pending appeal: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The first two factors are "the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The party seeking the stay bears the burden of demonstrating them. *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 868 (2024).

Given our past decision in *Grimm*, Doe has made the requisite showing as to all four factors and thus shown that an injunction should issue pending the appeal. In *Grimm*, the Court held that a school board policy that was in all material respects identical to the

Proviso violated Title IX and the Equal Protection Clause.[11] *Grimm* remains the law of this Circuit and is thus binding on all the district courts within it. *Gibbons v. Gibbs*, 99 F.4th 211, 213 (4th Cir. 2024) ("When a panel of this Court decides a legal issue in a published opinion, that ruling is binding on all future panels and district courts within this circuit unless it is abrogated by the Supreme Court or an en banc decision of this Court."). On appeal, a panel of this Court would be bound to consider the parties' arguments in view of *Grimm*. This reality is sufficient to show a likelihood of success in the forthcoming appeal from the district court's order refusing preliminary injunctive relief while simultaneously staying further proceedings.

Doe has likewise shown—based on *Grimm*—"that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis omitted). That's so because state action infringing constitutional rights generally constitutes irreparable harm and Doe has credibly alleged South Carolina's intent to enforce the Proviso against Doe during the pendency of this appeal. *See Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987).

---

[11] Mirroring the Proviso, the policy in *Grimm* required students to "use [multi-stall] restrooms matching their 'biological gender,'" which also looked to the sex the student had been assigned at birth. 972 F.3d at 593. The Court also held that the policy was subject to heightened (intermediate) scrutiny for purposes of the Equal Protection claim because it "rests on sex-based classifications *and* because transgender people constitute at least a quasi-suspect class." *Id.* at 607 (emphasis in original); *see also id.* at 607–13. Further, *Grimm* held that the policy did not survive Grimm's equal protection challenge because it was "not substantially related to its important interest in protecting students' privacy." *Id.* at 613; *see id.* at 613–15. Last, the Court held that the policy violated Grimm's rights under Title IX because it "discriminated against him 'on the basis of sex'" in a manner that caused legally cognizable harms. *Id.* at 616; *id.* at 616–19.

Last, the balance of equities and the public interest support upholding the rule of law. *Vitkus v. Blinken*, 79 F.4th 352, 368 (4th Cir. 2023) ("[T]he public undoubtedly has an interest in seeing its governmental institutions follow the law." (cleaned up)); *cf. Homans v. City of Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001) ("[W]e believe that the public interest is better served by following binding . . . precedent[.]"). Here, that encompasses preventing the State from enforcing a policy that directly contradicts *Grimm*—a prior, binding decision of this Court.

The State resists this conclusion on multiple grounds, none of which are persuasive. For example, it argues *Grimm* is not the analogous precedent Doe purports it to be, raising a host of subtle factual distinctions and new arguments for why the Proviso operates differently or is based on additional interests than the policy at issue in *Grimm*. In large part, these arguments ignore *Grimms'* holding, straining for a reason not to be bound by what it said. *Gibbons*, 99 F.4th at 213 (recognizing the rule that published decisions of this Court are binding unless abrogated by the Supreme Court or an en banc decision of this Court, and the controlling nature of a published opinion "does not disappear just because a future litigant identifies a fact, theory, or line of argument the previous panel could have but did not consider"). Such nuanced arguments also hold Doe to too high a standard. At present, we're focused on Doe's *likelihood* of success and *likelihood* of irreparable harm in the pending appeal, both of which *Grimm* directs in Doe's favor. *E.g.*, *U.S. Dep't of Lab. v. Wolf Run Mining Co.*, 452 F.3d 275, 280 (4th Cir. 2006) ("Because a preliminary injunction is temporary and is entered with only a preview evaluation of the merits, without resolving them, the decision to enter a preliminary injunction involves consideration of the

relative harms to the parties in maintaining a particular status between them until completion of this case."). The State also lodges multiple attacks on *Grimm* itself, faulting its internal reasoning as well as its comparative strength against decisions from other district and circuit courts that have reached opposite conclusions in cases raising Equal Protection and Title IX claims in this context. Again, those arguments are not grounds for any panel deciding the merits of this appeal because *Grimm* remains binding precedent within this Circuit. *See Gibbons*, 99 F.4th at 213.

Last, although this concern will no doubt be taken up more fully by the panel to consider Doe's appeal on the merits, we briefly note that the State discounts *Grimm*'s presently binding effect on Doe's claims by forecasting that it—or its premises—will be overruled by the Supreme Court's decision in *B.P.J.* Indeed, a similar rationale motivated the district court to deny Doe an injunction pending the appeal. Dist. Ct. ECF No. 103. Such speculation is not the proper basis for denying a preliminary injunction pending appeal when currently binding caselaw compels the conclusion that the movant has satisfied his burden. We do not know what the Supreme Court will say—or not say—in any future decision in *B.P.J.* Thus, we have no reason to know how or in what way its holding will impact *Grimm*'s precedential value or any future analysis of Doe's claims. All we know at present is that the Supreme Court has granted *certiorari* in a case that is likely to address relevant areas of the law. But granting *certiorari* does not alter the currently binding force of *Grimm*. *See Bethlehem Mines Corp. v. Henderson*, 939 F.2d 143, 151 n.7 (4th Cir. 1991) (observing that the Court's holding was required because of existing circuit precedent even though that precedent "conflicts with the views of some other circuits" and

"the Supreme Court has recently granted certiorari in this court's decision" because "[u]ntil the Supreme Court resolves this conflict, [our precedent] remains the law of this circuit").

For these reasons, we conclude that Doe has shown the propriety of enjoining enforcement of the Proviso against Doe pending the appeal. We therefore grant Doe's motion. At this time, no other parties are before us, so relief is solely limited to Doe.

Having granted Doe a preliminary injunction pending a decision in the underlying appeal, the urgency Doe points to as a basis for resolving the appeal largely dissipates. Doe can use the men's multi-stall restrooms for now as the parties submit their briefs according to the existing scheduling order. After those briefs are filed, the merits panel will determine all future courses of action. Therefore, Doe's motion to expedite the appeal is denied.

Entered at the direction of Judge Agee with the concurrence of Chief Judge Diaz and Judge Harris.

For the Court

/s/ Nwamaka Anowi, Clerk

DIAZ, Chief Judge, concurring:

I join in the panel's decision to grant John Doe's motion for injunction pending appeal, a decision that protects Doe from South Carolina's grievous attempt to infringe on his rights. Doe is a 14-year-old student who simply wishes to use the restroom. Doing so is a biological necessity. Doing so in restrooms that match his gender identity is his right under our precedent.

But South Carolina has enacted a proviso that openly defies the law. Doe first moved for an injunction last November, yet the district court didn't then decide the motion. After South Carolina reenacted the proviso for this school year, Doe renewed his motion for an injunction. This time, the district court denied it without prejudice and stayed the case, placing Doe in limbo, because the court thought the applicable law was unsettled.

Yet there's nothing unclear in our precedent. As the law stands, South Carolina's proviso is unconstitutional and violates Title IX. *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 607, 619 (4th Cir. 2020).

The district court relied principally on two recent developments at the Supreme Court, but neither defeats the controlling force of *Grimm*. The Court's decision in *United States v. Skrmetti*, 145 S. Ct. 1816 (2025), has little to say about the issues *Grimm* addressed.

In *Skrmetti*, the Court rejected the argument that a ban on transition-related medical care for minors classified based on sex or transgender status since "*no* minor [could] be administered" certain treatments for certain conditions but "minors of *any* sex [could] be

21

administered" those treatments "for other purposes." *Id.* at 1831. The Court therefore applied rational basis review to the medical care ban.

But here, the proviso at least distinguishes based on sex because a person can *only* violate it if they use a restroom that doesn't correspond to their birth-assigned sex. *See K.C. v. Individual Members of Med. Licensing Bd.*, 121 F.4th 604, 617 (7th Cir. 2024). So *Grimm*'s conclusion that heightened constitutional scrutiny applies to a prohibition on transgender students' use of gender-affirming restrooms remains good law. As does *Grimm*'s holding that transgender people are at least a quasi-suspect class. 972 F.3d at 607. And *Skrmetti* said nothing whatsoever to cause doubt as to the vitality of *Grimm*'s Title IX holding.

The other primary basis for the district court's inaction was the Supreme Court's grant of certiorari in *B.P.J. v. West Virginia*, 98 F.4th 542, 562, 565 (4th Cir. 2024), *cert. granted sub nom.*, *West Virginia v. B.P.J.*, 2025 WL 1829164 (U.S. July 3, 2025) (No. 24-43). That case involves a challenge to a law that bars transgender girls from participating in girls' school sports. But whatever the Court decides in that case, the law today is *Grimm*. *See Bethlehem Mines Corp. v. Henderson*, 939 F.2d 143, 151 n.7 (4th Cir. 1991).

South Carolina offers little in response to *Grimm*, and what it offers doesn't persuade. The state's attempt to distinguish *Grimm* based on Doe's failure to allege a formal gender dysphoria diagnosis falls flat considering that nothing in the case turned on such a diagnosis. To the contrary, we took pains there to explain that "[b]eing transgender is . . . not a psychiatric condition." *Grimm*, 972 F.3d at 594.

22

Next, South Carolina's assertion of "untested arguments" can't surmount our panel precedent. *Grimm*'s precedential force "does not disappear just because [South Carolina has] identifie[d] a fact, theory, or line of argument" that the panel there didn't confront. *Gibbons v. Gibbs*, 99 F.4th 211, 213 (4th Cir. 2024).

And South Carolina's invocation of a new government interest—that "[s]ingle-stall gender-neutral bathrooms are the best choice for vulnerable students with gender incongruence and gender dysphoria"—falters at the gate. Resp. to Mot. for Prelim. Inj. Pending Appeal at 15. The state's proviso says nothing about single-occupancy restrooms, gender-neutral or otherwise. So even if South Carolina's purported interest wasn't impermissibly "invented *post hoc* in response to litigation," *United States v. Virginia*, 518 U.S. 515, 533 (1996), the proviso can't possibly be adequately tailored to the interest to survive intermediate scrutiny. Further, South Carolina's newfound concern for its transgender students isn't relevant to *Grimm*'s Title IX holding, which independently entitles Doe to relief. *See* 972 F.3d at 616–19.

The bottom line is that *Grimm* is binding until the Supreme Court tells us otherwise. When evaluating the likelihood of success, "we ask whether the [movant] is likely to prevail on the merits of the issue before us, not whether he is likely to prevail on the merits of the underlying suit." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2562 (2025). The district court's injunction denial and stay decision were based on its view that the law is in flux, making the probability of Doe's success an issue in the appeal. Under currently applicable law, the probability is a certainty.

Meanwhile, Doe has endured—and will continue to endure—irreparable harm without an injunction. The constitutional violation is reason enough to grant relief. *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc).

Yet the record teems with other harms. Last year, Doe's school suspended him and threatened him with expulsion for using the boys' restroom. A172 ¶¶ 20–21. So Doe avoided using the restroom, leading him to "feel[] physically uncomfortable from a full bladder," which caused "trouble focusing on [his] classes." A172 ¶ 22. South Carolina and the Berkeley County School District have given every indication that they intend to enforce the proviso this school year, so some combination of school discipline, restroom avoidance, and lost learning opportunities is almost certain to recur.

Then there's the shame and indignity Doe will face for being singled out based on his transgender status. The state wants Doe to go to high school branded "with a scarlet 'T.'" *Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 530 (3d Cir. 2018). That's a harm that can't possibly be remedied with money damages.

The remaining injunction factors likewise favor Doe. The equities strongly favor granting Doe injunctive relief. "[A] state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional," even if the government has an interest in enforcing the law generally. *Leaders*, 2 F.4th at 346 (cleaned up); *cf. Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2562 (2025). And on the final factor for granting injunctive relief, "upholding constitutional rights serves

the public interest." *Newsom v. Albermarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003).

I'm also unpersuaded that the equities and public interest are meaningfully undermined by one student's use of the restroom. For Doe, however, school is the central organizing feature of his day-to-day life. To bar him from boys' restrooms for most of his waking hours is to demean him, day-in and day-out, with no end in sight. Denying relief in these circumstances would subject Doe to humiliation by a thousand cuts.

Of course, we can grant relief only if we have jurisdiction over the appeal. But whether the district court's without-prejudice denial of Doe's injunction motion was express, or because the denial coupled with a stay was constructive, we have jurisdiction to review the district court's order "refusing" injunctive relief under 28 U.S.C. § 1292(a)(1). And whether because the district court's stay "has an injunctive impact," *Hickey v. Baxter*, 833 F.2d 1005 (4th Cir. 1987) (unpublished table decision), or because it is "intimately bound up with" the denied injunction, *NationsBank Corp. v. Herman*, 174 F.3d 424, 427 (4th Cir. 1999) (citation omitted), we have jurisdiction to review the stay.

Our sister circuit's decision in *Defense Distributed v. Attorney General of N.J.*, 972 F.3d 193 (3d Cir. 2020), on which South Carolina heavily relies, doesn't hold otherwise. The court there found no appealable order when a district court denied an injunction without prejudice and stayed the case. *Id.* 198–199. But the court noted ongoing parallel litigation that enabled the plaintiffs to seek relief elsewhere, and expressly declined to adopt a categorical rule that a without-prejudice denial of an injunction coupled with a stay

isn't appealable. *Id.* at 198–199, nn.4 & 7. The district court's actions here, by contrast, hamstring Doe's ability to seek relief.

South Carolina's claim that Doe can't litigate this appeal because he challenges a proviso not identified in the operative complaint is formalism at its finest. First, South Carolina objects to Doe's standing to challenge the new proviso. But "standing is to be determined as of the commencement of the suit." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992). Changes in circumstances during litigation sound in mootness, not standing. A case is only moot if "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *West Virginia v. EPA*, 597 U.S. 697, 720 (2022). But here, the wrongful behavior here recurred: the state reenacted the proviso for this school year.

In its reply in support of its motion to dismiss, South Carolina clarifies that part of its standing challenge is directed at this appeal, since Doe must show that he "has experienced an injury fairly traceable to the judgment below." *Id.* at 718 (cleaned up). But that requirement is easily satisfied because the district court's actions prevent Doe from amending the complaint to name the new proviso, thereby prolonging Doe's injuries.

South Carolina also argues that Doe's renewed injunction motion wasn't "operative" in the district court because it challenged a proviso not identified in the complaint. The state's argument is really that the motion was a nullity, but the state cites no authority for that proposition.

True, the operative complaint governs the relief available. *See Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). But whether a court

26

can grant relief is a question of remedy, not its ability to entertain the motion. Indeed, the district court cases that the state cites all denied motions for injunctive relief for the reason South Carolina presses on the merits.

In any event, the deficiencies South Carolina identifies are easily solved by Doe's proposed amended complaint, which eliminates any technical problems that arise from the operative complaint's failure to identify the new proviso. *See Holloway v. City of Virginia Beach*, 42 F.4th 266, 277 (4th Cir. 2022) (amended pleadings can solve jurisdictional defects).

\*      \*      \*

The panel correctly refuses to sanction South Carolina's utter disregard for this court's precedent and gives Doe the peace of mind to perform a basic bodily function at school without the state's interference. Doe is a teenager who, during the sturm und drang typical of adolescence, has grappled with extraordinarily complex questions of identity. Rather than support Doe, South Carolina has denigrated him, and every other transgender person besides.

There's zero evidence that Doe's use of boys' restrooms presents even a remote possibility of harm to anyone. But the evidence of state hostility toward him overwhelms.

I concur in the court's order, as amended.

AGEE, Circuit Judge, concurring in the decision:

The panel's amended order explains the decision to grant Doe's motion for injunctive relief pending appeal and deny Doe's motion to expedite and the State's motion to dismiss.

Bound by *Grimm*, I write separately to note that my agreement is based on the settled principle that no panel of this Court can ignore prior, published decisions of the Court when deciding how to rule in a later case. As I have noted previously, I believe that *Grimm* was wrongly decided and, if Doe's claims were being presented on a clean slate, I would conclude that Doe has not shown a likelihood of prevailing on either the Title IX or the Equal Protection claim. *See B.P.J. ex. rel. Jackson v. West Virginia*, 98 F.4th 542, 574–80 (4th Cir. 2024) (Agee, J., concurring in part and dissenting in part). Nor am I the only member of the Court to believe so. *Grimm*, 972 F.3d at 627–37 (Niemeyer, J., dissenting). Two sister circuits have, since *Grimm*, rejected its reasoning and held that neither the Equal Protection Clause nor Title IX are violated by public school bathroom policies that require use consistent with a student's biological sex. *See Roe v. Critchfield*, 137 F.4th 912 (9th Cir. 2025); *Adams ex. rel. Kasper v. Sch. Bd. of St. Johns Cnty*, 57 F.4th 791, 796 (11th Cir. 2022) (en banc). And three members of the Supreme Court have since publicly expressed that the reasoning supporting *Grimm*'s analysis was incorrect. *See United States v. Skrmetti*, 605 U.S. ---, 145 S. Ct. 1816, 1837 (2025) (Thomas, J., concurring); *see also id.* at 1851 (Barrett, J., with whom Justice Thomas joins, concurring) (articulating the view that "transgender individuals do not constitute a suspect class" for purposes of the Equal Protection Clause); *see also id.* at 1855 (Alito, J., concurring in part and concurring in the

judgment) (assuming, without deciding, whether "the law classifies based on transgender status," and articulating the view that even so, "such a classification does not warrant heightened scrutiny").

Recently, the Supreme Court has granted *certiorari* in two cases for its upcoming term that may well provide a nationwide answer to whether the Equal Protection Clause or Title IX prohibit states from designating single-sex sports teams "based on biological sex determined at birth." *West Virginia v. B.P.J.*, No. 24-43, Petition for a Writ of Certiorari, at I–II; *see also Little v. Hecox*, No. 24–38. The Supreme Court's reasoning in those decisions will likely impact what, if anything, remains of *Grimm* for purposes of assessing public school bathroom policies that similarly designate single-sex bathrooms "based on biological sex determined at birth."

But none of this matters for purposes of deciding the issue presented by Doe's motion for an injunction pending appeal. *Grimm* binds all the judges of this Circuit, notwithstanding any expectation that the Supreme Court will adjust, if not overrule, the foundations for *Grimm* in a way that is likely to determine whether Doe will ultimately prevail in this action. The current law of this Circuit answers the question of whether Doe has satisfied the requirements for obtaining an injunction pending the appeal. For that reason, I voted to grant Doe's motion for an injunction pending appeal, but reiterate from my separate opinion in *B.P.J.*: "One can only hope that the Supreme Court will take the opportunity with all deliberate speed to resolve these questions of national importance." 98 F.4th at 580.